No. 72,835

STATE OF KANSAS, *Appellee*, v. DAVID L. WILLIAMS, *Appellant*.

(913 P.2d 587)

Opinion filed March 8, 1996.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX J.: The primary issue is the district court's denial of David L. Williams' motion to withdraw his plea of nolo contendere. Williams pled to first-degree premeditated murder, aggravated kidnapping, rape, aggravated criminal sodomy, and other charges. Our jurisdiction is under K.S.A. 22-3601(b)(1) (Williams was convicted of first-degree murder, an off-grid crime).

Additional issues are whether the district court erred in: (a) denying Williams' request for funds to hire a psychologist to present evidence in mitigation; (b) finding that Williams' counsel was effective; (c) determining that the notice requirements of K.S.A. 1993 Supp. 21-4624 (the hard 40) were complied with; and (d) completing the pronouncement of sentence after Williams was removed from the courtroom for disruptive behavior. Williams also

contends he was denied an opportunity to present evidence in mitigation at the time of his sentencing.

We find no error and affirm.

## FACTS

Williams was charged in a multi-count complaint alleging criminal possession of a firearm, aggravated burglary, seven counts of kidnapping, three counts of aggravated criminal sodomy, three counts of rape, and premeditated murder. On July 26, 1993, carrying a semiautomatic handgun, Williams entered the home of Mildred Adams, with whom he had a discordant common-law marriage. Later, he told the police he took the gun to Adams' home to kill her. Adams was not present. Seven persons in the home, all females or young children, were forced into the bathroom at gunpoint; one of the children was Williams' 12-year-old daughter. The girls were ordered to remove their clothes. Williams took one of the girls into the bedroom, raped her, forced her to perform oral sex, and then tied her up. Williams raped and sodomized his daughter. When Adams' teenage son arrived home, Williams tied and gagged him at gunpoint while repeatedly saying that he intended to kill Adams. Williams raped a third girl and forced her to perform oral sex. When Adams entered the house with a female friend, the friend was ordered into the bathroom. Adams struggled with Williams. He killed her by striking her repeatedly in the head with the butt of his gun and a glass lamp. The killing occurred in full view of some of the children.

Williams was on parole, having previously served 10 years in prison for convictions of rape and aggravated sodomy. The week before Adams was killed, she had obtained a protection from abuse order against Williams.

On January 20, 1994, Williams was arraigned. The prosecutor handed defense counsel and the judge copies of the notice of intent to seek the hard 40 sentence and requested that the judge accept filing of the notice with the court. The judge did accept the filing, but did not write the time and date of receipt on the notice handed to him by the prosecutor. The notice was date-stamped by the clerk of the district court on January 24, 1994.

Williams entered into a plea agreement on the day his jury trial was to commence. Williams' counsel discussed the plea agreement with him for an hour before he decided to accept it. The State agreed to drop three kidnapping charges and seek a hard 40 sentence, with the recommendation that sentences for all other crimes be served concurrent with the hard 40 sentence. Williams agreed to plead "no contest" to the remaining charges. After the judge questioned Williams at length, the district court accepted the plea and scheduled a sentencing date. The State then presented evidence of aggravating factors, including: (1) having a prior conviction for a felony (rape) in which Williams inflicted great bodily harm, disfigurement, or death; (2) knowingly or purposely killing or creating a great risk of death to multiple persons; (3) committing the offense to avoid or prevent a lawful arrest or prosecution; (4) committing the crime in an especially heinous, atrocious, or cruel manner; and (5) killing the victim because she was a witness in a criminal proceeding.

Williams, through his counsel from the Public Defender's office, offered in mitigation: (1) The crime occurred while he was under the influence of extreme mental or emotional disturbances; (2) the victim had treated him poorly in the past; (3) he killed the victim in the heat of passion rather than in cold blood; and (4) he is a good worker and has a family to support. The court determined that the aggravating factors outweighed the mitigating factors, ordered a presentence investigation (PSI) report, and scheduled sentencing for July 7, 1994.

Williams filed a pro se motion to withdraw his plea on the ground that his attorneys coerced him to enter into the plea agreement against his will. New counsel was appointed. Williams, through his new counsel, contested the sufficiency of the hard 40 notice and filed an amended motion to withdraw the plea, asserting that it was unknowing, involuntary, and the result of ineffective assistance of counsel. New counsel also filed a motion to reopen the dispositional phase of the case to present additional evidence in mitigation and to cross-examine the State's evidence of aggravating factors.

The judge denied new counsel's oral request for funds to employ a psychologist to examine Williams for purposes of presenting ev-

idence in mitigation. At the hearing on the motion to withdraw the plea, Williams' original counsel, Jillian Waesche, and her second chair testified about informing Williams of his rights when he decided to accept the plea agreement. The district court denied Williams' motions, determining that his plea was knowing and voluntary, counsel was not ineffective, and sufficient evidence of aggravating and mitigating factors was presented.

The judge proceeded with the sentencing and gave Williams his right of allocution before imposing sentence. Williams declined to make any statement. The judge indicated that the sentence recommended in the plea agreement would be imposed and began reading the sentences for the crimes to which Williams pled. At that time, Williams became verbally abusive and, after repeated warnings from the judge, was found in contempt and escorted out of the courtroom. The judge finished pronouncing sentence. The court imposed a controlling sentence of life imprisonment without parole eligibility for 40 years. Williams also received a sentence of 1 year for the contempt citation, to be served consecutively.

## DISCUSSION
### The Nolo Contendere Plea

Statutory guidance for accepting a nolo contendere plea is furnished by K.S.A. 22-3210, which embodies the requirements of due process set forth in *Boykin v. Alabama*, 395 U.S. 238, 243, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

A district court has discretion to allow withdrawal of a plea for "good cause" before sentencing and to correct "manifest injustice" after sentencing. K.S.A. 22-3210(d); *State v. Solomon*, 257 Kan. 212, 219, 891 P.2d 407 (1995).

Our standard in reviewing a district court's ruling on a motion to withdraw a plea is abuse of discretion. *State v. Morris*, 254 Kan. 993, 1001, 869 P.2d 739 (1994).

Williams contends that his nolo contendere plea was not knowing or voluntary because neither his counsel nor the district court informed him that by entering the plea, he was waiving his right to have a jury determine if the hard 40 sentence should apply. The record establishes that Williams was advised by counsel that a plea

of nolo contendere would result in waiver of his right to have a jury participate in the hard 40 sentencing proceeding. In addition, the right to a sentencing jury is statutory, not constitutional. A waiver on the record is not necessary, because a waiver of the right to a jury trial includes a waiver of the right to have the jury participate in the hard 40 sentencing proceeding.

K.S.A. 1993 Supp. 21-4624(2) provides in part:

"The jury at the sentencing proceeding may be waived in the manner provided by K.S.A. 22-3403 [by submission of the parties with the court's consent] and amendments thereto for waiver of a trial jury. If the jury at the sentencing proceeding has been waived *or the trial jury has been waived, the sentencing proceeding shall be conducted by the court.*" (Emphasis added.)

Once a hard 40 defendant is convicted by a jury, the right to have the jury participate in the sentencing proceeding may be waived. However, a defendant cannot waive the jury trial and then insist upon a jury for the sentencing proceeding. K.S.A. 1993 Supp. 21-4624(2) is not ambiguous.

During the hearing on Williams' motion to withdraw his plea, his initial counsel, Waesche, was called to testify as to the advice she gave him at the time of the plea agreement. The following is, in part, the State's cross-examination:

"Q. All right. So we know that you at least spent numerous other occasions with him during the course of time he was incarcerated?
"A. Yes.
"Q. And during those other occasions, did you ever have the opportunity to discuss with him the Hard 40 and the legal implications specifically with regard to a jury?
"A. Yes, I told him exactly how that would go.
"Q. Okay. Can you tell us what you told him?
"A. I told him that we'd go to jury trial on—the jury would decide whether he was guilty or not guilty on all counts. That if he was found to be guilty on the murder count, that the jury would decide what sentence to recommend to the Court.
"Q. How many times did you have that discussion with him, if you recall?
"A. I would say at the most twice.
"Q. And Mr. Rathbun [Williams' later counsel], on his direct examination, asked you if you had specifically advised the defendant that waiving jury trial would waive his sentencing jury; do you recall that question?
"A. Yes.

"Q. Do you recall your response, 'Not in those terms?'

"A. That is correct.

"Q. What terms were they that you advised him?

"A. I told him that if he entered a plea that the judge would sentence him.

"Q. Now, you indicated that on more than one occasion that you discussed the Hard 40 and the jury sentencing and the court sentencing; is that correct?

"A. I discussed the Hard 40 procedure on at least one occasion. I discussed the procedure of jury trial on more than one occasion.

"Q. And on the date of May the 23rd, did you also discuss these issues with him in the library?

"A. Yes.

"Q. And can you tell me what you discussed with him? What did you tell him about that and the plea?

"A. I told him that it was my recommendation that he accept the recommendation by the State to recommend a life sentence with 40 years being eligible for parole as opposed to going to trial and potentially getting three times the amount of sentence. And I recommended that he do it in this court in particular because this judge, in my professional opinion and in my experience, was more compassionate and more sensitive, and we would have a chance for mercy from this court."

In addition, the record shows that Williams made a knowing and voluntary waiver of his right to a jury trial.

After the judge questioned Williams and was satisfied that Williams had knowingly and voluntarily waived his constitutional rights, the prosecutor stated there would be a bifurcated type of proceeding: evidence would be presented with the nolo contendere plea, followed by presentation of the State's evidence on the hard 40 sentence.

The State then presented a summary of its witnesses' testimony. After the summary, the judge asked Williams if it was his decision to plead nolo contendere, and Williams said it was.

The judge accepted Williams' plea of nolo contendere, determined he had knowingly and voluntarily waived his constitutional rights in entering his plea, and found Williams guilty of each count to which he pled. The judge set the sentencing hearing for July 7, 1993, indicating that he was obligated to order a PSI report.

The State then moved forward into the hard 40 sentencing phase, presenting evidence of aggravating factors by relying on the previously presented summaries of State's witnesses' testimony. Af-

ter the State finished, the judge gave Waesche the opportunity to speak. She began as follows:

MS. WAESCHE: "Thank you, Your Honor. Your Honor, it's our position that there are extreme mitigating factors in this case. Mr. Williams was under an extreme mental and emotional condition when he committed these crimes. This is a tragic story, Your Honor, of a man devastated by rejection of his only true love."

Waesche then continued with a lengthy, detailed recitation of facts and argument to support the existence of mitigating factors.

After reviewing what had been presented, the judge determined the aggravating factors had been proved and outweighed the mitigating factors, and imposed the hard 40 sentence under K.S.A. 1993 Supp. 21-4624 and K.S.A. 1993 Supp. 21-4625.

Williams and his counsel: (1) observed and acquiesced as the State requested to move into the hard 40 sentencing phase (the hard 40 hearing was held approximately 5 months after Williams was served with the hard 40 notice), (2) participated as Waesche presented Williams' evidence of mitigating factors, and (3) stood mute after the district court made its finding that the aggravating factors were proven and outweighed any mitigating factors.

The only thing left to be done on Williams' sentencing was to receive the PSI report and pronounce his sentence under K.S.A. 1993 Supp. 21-4628, which provides for the terms of the hard 40 sentence. Neither Williams nor his counsel indicated at the hearing on his plea agreement that they wished to present anything further regarding mitigating circumstances. Waesche, during her presentation of the mitigating circumstances, stated, "We will go more into detail at the presentence investigation." Waesche's statement does not suggest she was requesting any further opportunity for a hearing on mitigating evidence. Williams declined to participate in the presentence investigation.

Williams concedes that there is no constitutional right to a sentencing jury. A defendant has no constitutional right to a jury in a hard 40 determination. *State v. Gideon*, 257 Kan. 591, Syl. ¶ 3, 894 P.2d 850 (1995).

Williams relies on *U. S. v. Robinson*, 8 F.3d 418, 420 (7th Cir. 1993). Robinson was convicted of RICO conspiracy and tax and

bankruptcy fraud. The district court imposed criminal forfeiture. Robinson appealed on the grounds that he had not knowingly and voluntarily waived his statutory right to a jury determination on the forfeiture issue. The government contended that during a conference in chambers (Robinson was not present), Robinson's counsel agreed to submit the forfeiture issue to the court, thus waiving the jury. The Seventh Circuit Court of Appeals disagreed because the record did not indicate that Robinson had been consulted or that Robinson had made the decision to waive the jury determination. 8 F.3d at 423. *Robinson* is distinguished on its facts from this case. Williams, by entering his nolo contendere plea, expressly waived his right to a jury trial. We find no abuse of discretion in denying Williams' motion to withdraw his plea.

<u>Mitigating Circumstances</u>

Williams contends the district court refused to allow him to present mitigation evidence under K.S.A. 1993 Supp. 21-4624 during the hard 40 hearing. We disagree. The record indicates that Williams was given ample opportunity to present mitigation evidence. Williams utilized that opportunity at the time of his plea agreement through his counsel, Waesche. Williams elected not to offer anything in mitigation to the presentence investigator. Williams' new counsel, Kiehl Rathbun, filed a motion to reopen the dispositional phase of the case to present mitigating evidence; however, the motion did not indicate that there was any additional mitigating evidence to present.

The hearing on Williams' motion to withdraw his plea took place over the course of 3 days. Near the conclusion of the second day (July 21, 1994), Rathbun asked the judge whether Williams would be given the opportunity to present further evidence in mitigation if the judge denied Williams' motion to withdraw his plea. The State indicated that it would not oppose granting Williams such an opportunity, if the mitigation matter could be handled on the final day of the hearing on the motion to withdraw the plea. Rathbun said that he did not believe he would have time to prepare for the mitigation hearing, if it were to occur that soon. The judge requested Rathbun to visit with Williams and determine the number

of mitigating witnesses so the judge could determine when the hearing could be scheduled. Rathbun advised the judge that there would be two witnesses, but he did not feel he would have time to interview them before the next hearing date. As the judge recessed the hearing and announced the time when the hearing would continue (July 25, 1994), he authorized Rathbun, before the next hearing date, to interview any mitigation witnesses and requested that Rathbun advise the judge of the number of witnesses needed for the mitigation hearing.

At the conclusion of the hearing on the motion to withdraw the plea on July 25, 1994, the judge asked Rathbun for the status of his preparation for a mitigation hearing.

Counsel responded:

"As I understand your previous ruling, you have instructed the [defense] that if we have evidence that is other than what has been placed in the record that we would be given an opportunity to present that to the Court. *The evidence that is available has been presented within this record.* And if the Court was regarding that hearing as a fact hearing—as you apparently were—then I have to tell you as an officer of the Court that I would be putting on the same evidence. It would— I would—like any trial lawyer, *I think I can do it better, but it would be essentially the same thing. In other words, I have nothing new other than what's covered in there.*" (Emphasis added.)

Rathbun then requested a 6-week extension to prepare for a new mitigation hearing. The request was denied. The record fails to show any additional mitigating circumstances to present. Rathbun said that there were none. The district court's decision to deny Williams an additional opportunity to look for mitigation evidence, absent any indication there would be any, was sound.

Williams was given another opportunity to present mitigating circumstances at the time the district court pronounced his sentence. He declined.

"THE COURT: Mr. Williams, would you like to address the Court before your sentence, sir? Mr. Williams is shaking his head—
"[MR. RATHBUN]: Can I have just a moment, Your Honor?
"THE COURT: Yes, you may.
"[MR. RATHBUN]: Your Honor, as to my client's right of allocution in these matters, first of all, there is the Hard 40.
"THE COURT: Yes, sir.

"[MR. RATHBUN]: And I think the Court has made a finding that this is a Hard 40 case, which is in effect that the Court is finding that the sentence is a life sentence with a 40-year parole deferment. . . . I think the defendant's opportunity to speak to the Court in mitigation on that count was covered by the mitigation hearing held by the Court at that time wherein defendant's counsel said things on the defendant's behalf. So I think that's as to that count. The right to— The Court at that time basically said it's a Hard 40 case, I'm going to impose the 40-year parole deferment and require to apply and imposed said sentence, and the defendant's right to speak with the Court was covered by counsel in the hearing. As to all other remaining counts, the defendant has nothing he wants to say to the Court."

We find no abuse of discretion.

### Williams' Request for Funds to Hire a Psychologist

Rathbun requested funds to employ a psychologist to evaluate Williams for presenting expert testimony in mitigation concerning Williams' state of mind at the time the crime was committed. Rathbun made the request in the event the district court denied the motion to withdraw the plea.

The district court denied the request for funds, but left open the issue of whether a pro bono psychologist could testify. At a later hearing, the judge clarified the basis for his ruling. The district court was satisfied that Williams had already been psychologically evaluated, Williams had access to that evaluation, and any further psychological evaluation would be unnecessary.

Williams cites *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), in support of his contention that he should be entitled to the assistance of a psychologist, as a matter of due process. *Ake* held, in part, that when the State presents psychiatric evidence of an indigent defendant's future dangerousness in a capital sentencing proceeding, due process requires that the State provide the defendant with the assistance of an independent psychiatrist. 470 U.S. at 83-84. *Ake* does not apply. The State did not present any psychiatric evidence during the hard 40 sentencing proceeding. The district court did not abuse its discretion in denying Williams' request. See *State v. Zuck*, 21 Kan. App. 2d 597, 607, 904 P.2d 1005 (1995) (denial of defendant's request for independent examination by an expert of minor victims of sex crimes

to prepare against State's motion for departure not an abuse of discretion).

## Assistance of Counsel

An abuse of discretion standard of review is applied to the district court's ruling that Williams received effective assistance of counsel concerning his plea agreement. See *State v. Rowell*, 256 Kan. 200, 213, 883 P.2d 1184 (1994).

Williams cites *Chamberlain v. State*, 236 Kan. 650, Syl ¶ 3, 654-55, 694 P.2d 468 (1985), as providing the standard for establishing a claim of ineffective assistance of counsel. *Chamberlain* considers a claim that ineffective counsel denied the defendant a fair trial.

Williams did not have a trial. He entered a plea agreement. *State v. Solomon*, 257 Kan. at 223, sets forth the standard for a claim of ineffective assistance of counsel concerning a plea agreement:

"To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, the defendant must show that counsel's performance fell below the standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " (Quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 103 S. Ct. 366 [1985].)

Williams contends his original counsel was ineffective because she failed to: (1) advise him that he would waive his right to a sentencing jury if he entered a plea of nolo contendere and (2) present evidence in mitigation at the time the State requested the hard 40.

Williams first raised the issue of ineffective assistance of counsel in his motion to withdraw his plea. Williams did not assert any ineffective counsel claim at the district court level concerning his mitigation hearing.

An allegation of ineffective assistance of counsel will not be considered for the first time on appeal. *State v. Hall*, 246 Kan. 728, Syl. ¶ 9, 793 P.2d 737 (1990). We observe the claim lacks merit. Williams has failed to show that Waesche's efforts concerning the presentation of mitigating circumstances were other than reasonable.

The only evidence presented by Williams at the hearing on his motion to withdraw his plea was the testimony of his former counsel, Waesche, and her second chair. The record fails to provide any evidence supporting either prong of the two-prong test in *Solomon*. Waesche's advice to Williams about the sentencing if Williams waived his right to a jury trial was reasonable and correct. Williams did not testify, so there is no evidence that Williams would not have entered into the plea agreement had Waesche's advice been any different.

### The Hard 40 Notice

K.S.A. 1993 Supp. 21-4624(1) provides in relevant part:

"If a defendant is charged with murder in the first degree, the county or district attorney shall file written notice if such attorney intends, upon conviction or adjudication of guilt of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be required to serve a mandatory term of imprisonment of 40 years. Such notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment. If such notice is not filed and served as required by this subsection, the county or district attorney may not request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder."

The notice provisions in 21-4624(1) are mandatory. *State v. Collier,* 259 Kan. 346, 913 P.2d 597 (1996); *State v. Deavers,* 252 Kan. 149, Syl. ¶ 6, 843 P.2d 695 (1992), *cert. denied* 125 L. Ed. 2d 676 (1993).

Williams argues that the State's hard 40 notice did not comply with the mandatory notice provisions because the notice filed with the court was not file-stamped by the clerk of the district court until 4 days after the arraignment. The record indicates that counsel for the State handed the judge the hard 40 notice at the time of the arraignment hearing, stating: "The State files with the Court the original document." The judge responded: "Thank you, Ms: Foulston. It will be filed in the court clerk's office." However, the judge did not write the date and time he received it on the document, as required by K.S.A. 60-205(e), which provides:

"(e) *Filing with the court defined.* The filing of pleadings and other papers with the court as required by this article shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with the judge, in which event the *judge shall note thereon the filing date* and forthwith transmit them to the office of the clerk." (Emphasis added.)

The question is whether the judge's failure to note the date and time of receipt of the hard 40 notice invalidates the filing of the notice. *State v. Peckham*, 255 Kan. 310, 875 P.2d 257 (1994), answers the question. In *Peckham*, we said:

"As noted by the trial judge, the transcript of arraignment does not show that the State gave a copy of its notice to the court. According to the trial judge, a copy—not the original—was placed on the judge's bench. The State did not indicate on the record that it was placing a copy of the notice on the judge's bench with the intent to satisfy the filing requirement of K.S.A. 1992 Supp. 21-4624 rather than as a courtesy to the judge.

". . . The record before us gives no indication the copy placed on the judge's bench was for any purpose other than as a courtesy, and the trial judge made no finding or comment that gives any indication the trial judge intended or contemplated that the copy placed on his bench was offered or accepted for filing pursuant to 60-205(e)." 255 Kan. at 317-18.

See *State v. Johnson*, 255 Kan. 140, 154, 871 P.2d 1246 (1994) (hard 40 notice deemed invalid; transcript of arraignment proceedings did not indicate written notice was given to either the court or defense counsel at that time).

The judge in Williams' case accepted custody of the hard 40 notice filed by the State at the time of the arraignment hearing. Although the judge did not expressly say that the filing was accepted pursuant to 60-205(e), he clearly accepted the document for filing with the court. The fact that the judge failed to write the date and time the document was received does not invalidate the filing. The filing is complete when the judge personally accepts custody. Failure to forward the notice forthwith or to enter a necessary date does not prejudice the State. *Peckham*, 255 Kan. at 316-17. The journal entry overruling Williams' objection to the hard 40 notice recites: "The Court states that it accepted the State's filing of the notice to seek the Hard Forty as a filing with the Court at the time of arraignment."

## Sentencing

Williams argues that his sentence should be vacated because he was not present at the time the judge pronounced his sentence. Williams declined to speak when afforded his right of allocution. The judge began to pronounce the sentences for the various counts to which Williams pled. As the judge discussed Counts 14 and 15 (dealing with Williams' rape and sodomy of his 12-year old daughter), Williams became disruptive. The judge warned Williams that he would be found in contempt and removed from the courtroom. Williams made the offending remarks after the court had pronounced sentence on 9 of the 17 crimes of conviction.

Williams continued with his outburst and was removed by several deputies. Williams' remarks were vulgar, contemptuous, profane, debasing, and scatological.

Williams' counsel requested a continuance until his client could be present, either personally or by television. The judge denied the request; continued with the sentencing, including the hard 40 sentence for Count 20; and imposed a sentence of 1 year in the county jail for the contempt.

K.S.A. 22-3405 provides in part:

"(1) The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law."

The Court of Appeals considered disruptive behavior in *State v. Hartfield*, 9 Kan. App. 2d 156, 161, 676 P.2d 141 (1984) (quoting *Illinois v. Allen*, 397 U.S. 337, 343, 25 L. Ed. 2d 353, 90 S. Ct. 1057, *reh. denied* 398 U.S. 915 [1970]).

"[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."

The issue before us concerns Williams' absence at the time of sentencing. We reviewed a claim based on sentencing *in absentia* in *State v. Braun*, 253 Kan. 141, 145, 853 P.2d 686 (1993) (no error where defendant waives the right to be present by affidavit). Wil-

liams was not *in absentia* during a substantial position of his sentencing. His disruptive conduct caused his removal after he was warned by the judge.

In *State v. Kelly*, 213 Kan. 237, 243, 515 P.2d 1030 (1973), we emphasized that the requirement of a defendant's presence at sentencing benefitted the defendant by insuring the right of allocution. Williams had been given and declined his right of allocution. The judge was well into pronouncing the sentence at the time of Williams' removal. The length of the transcript after removal indicates the hearing continued only a few more minutes before the sentencing was completed. At the point of Williams' outburst, the court had already been in session to hear evidence on Williams' motion to withdraw his plea and the oral arguments of respective counsel. Williams knew the terms of his plea bargain, terms that formed the sentence he received. The victim's family members were present in court. One of them spoke in open court before pronouncement of the sentence, offering a compelling victim impact statement on behalf of the family.

Under the circumstances, a continuance would have served no purpose except to reward Williams for his disruptive behavior. District judges must have discretion to control the courtrooms of this state. As the United States Supreme Court has observed in *Allen*, 397 U.S. at 343-46: "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. . . . It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes."

The record indicates that Williams was in an agitated state, and safety considerations were also involved in his removal. Under the facts of this case, we find no error in sentencing.

Affirmed.