NOT DESIGNATED FOR PUBLICATION

No. 119,083

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAHOGANY JALENE PAYNE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed September 20, 2019. Conviction reversed, sentence vacated, and case remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Joan Lowdon*, deputy county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: The power of closing argument in a criminal case cannot be overstated, especially when the jury's verdict turns on limited circumstantial evidence. A skilled prosecutor may weave that evidence into a tight narrative that virtually demands a finding of guilt. A similarly skilled defense lawyer, however, may point out gaps in the evidence suggestive of reasonable doubt and, thus, an obligation to render a not guilty verdict. The foundation of our adversarial system of adjudication depends upon that sort

of clash of advocates testing the evidence in a given case, thereby guiding lay jurors to a "true" verdict.

The Leavenworth County District Court deprived Defendant Mahogany Jalene Payne of her right to a fair trial when it impermissibly terminated her lawyer's closing argument to the jury. Payne had been charged with sexually assaulting two young children for whom she provided daycare. Her lawyer had thoroughly discussed one of the charges in his closing argument and had just begun to discuss the other when the district court ordered him to sit down without finishing, ostensibly because he had strayed outside the evidence in his comments. The two prosecutors trying the case presented their complete opening and rebuttal arguments to the jury. The jury came back with a not guilty verdict on the charge Payne's lawyer got to address in closing argument and a guilty verdict on the charge he wasn't allowed to discuss.

As we explain, the district court's action compromised Payne's constitutionally protected right to be represented by a lawyer at all critical stages of the case against her and, in turn, impermissibly diminished her constitutional rights to a jury trial and to due process. The record fails to demonstrate good cause for the district court's extraordinary decision to terminate the closing argument. And given the comparatively slim circumstantial evidence supporting the guilty verdict, we cannot say the district court's error was harmless. We, therefore, reverse Payne's conviction, vacate her sentence, and remand with directions that she promptly be granted a new trial.

FACTUAL AND PROCEDURAL HISTORY

In July 2016, the State charged Payne with two counts of rape alleging she had sexually abused two young girls for whom she provided childcare. Although the charged incidents occurred about nine months apart, the State's theory was the same:  Payne had forcefully penetrated each girl's vagina with her hands or an object causing discernable

injuries. See K.S.A. 2016 Supp. 21-5503(a)(3) (criminalizing "sexual intercourse" with child under 14 years of age as rape); K.S.A. 2016 Supp. 21-5501(a) (defining "sexual intercourse" as "any penetration of the female sex organ by a finger, the male sex organ or any object"). As charged, each crime was an off-grid felony punishable by life in prison. K.S.A. 2016 Supp. 21-5503(b)(2); K.S.A. 2016 Supp. 21-6627(a)(1)(B). The jury heard evidence and considered the case for three days in early October 2017.

On the count on which the jury returned a not guilty verdict, the State alleged Payne assaulted A.R. in April 2015, when she was a little over five years old. The State's evidence included deposition testimony from a physician who examined the child and said the condition of her genitalia was consistent with forcible penetration. But, as Payne's lawyer pointed out to the jury in closing argument, the physician acknowledged the condition was also consistent with various infections or other nontraumatic causes. A.R. gave a statement to investigators in which she said Payne assaulted her, and she repeated that accusation in general terms from the witness stand at trial. A.R. testified that Payne "scratched" her vagina after giving her a bath, causing her to bleed into her underwear. Again in closing argument to the jury, Payne's lawyer pointed to inconsistencies in A.R.'s accounts and to his expert witness' testimony that the investigatory interview was highly suggestive and channeled A.R. into describing a sexual assault.

Based on the evidence and after hearing closing arguments from the prosecutors and Payne's lawyer, the jurors were left with a reasonable doubt as to Payne's guilt on the charge of raping A.R. Adhering to their duty as outlined in the jury instructions, they returned a verdict of not guilty on that count.

On the count on which the jury convicted, the State alleged Payne sexually assaulted M.G., who was then about a year-and-a-half old. The State did not present any investigatory interview of M.G. for the jurors' consideration, and she did not testify

3

during the trial. M.G.'s mother testified that M.G. was fine when she dropped the child off at Payne's home one morning in January 2016. That evening when M.G.'s mother changed her daughter's diaper she noticed a reddish stain. On the second diaper change, M.G.'s mother saw considerably more red discharge and concluded the child might be bleeding from her vaginal area. She took M.G. to an area hospital. The physicians there had M.G. transferred to Children's Mercy Hospital in Kansas City, Missouri, where a pediatrician with training in diagnosing child abuse examined her. The pediatrician observed significant internal injuries to M.G.'s vagina that likely would have been caused by the insertion of a blunt object—in short, by sexual abuse. The pediatrician, who testified as a State's witness, said M.G.'s injuries might have resulted from some highly unusual scenario in which the child forcefully impaled herself on some object. With that evidence, the State's case essentially rested on inferential evidence: M.G. was perfectly okay when she arrived at Payne's home in the morning, and when her mother retrieved her that evening she was anything but okay. So somebody sexually abused M.G. in between while she was in Payne's care.

During the trial, Payne testified in her own defense and denied harming A.R. or M.G. in any way, consistent with what she had earlier told investigators. Payne described M.G. to the jurors as a normally lively, outgoing child. But Payne told the jurors that on the day in question M.G. was out of sorts and listless. Payne described M.G. as having a severe diaper rash and recalled her mother saying she planned to take the child to the doctor. A friend of Payne's testified she was at Payne's home that morning and told the jurors M.G. seemed unusually quiet. Payne's therapist also testified that she generally stopped by to see Payne on a weekly basis and happened to be there that morning. The therapist regularly met with Payne to help her cope with a constellation of health problems that kept her from outside employment and otherwise limited her activities. The therapist testified that she, too, thought M.G., who she had seen other times, appeared subdued and especially "clingy." The therapist told the jurors she saw Payne change M.G. and was taken aback by the severity of the child's diaper rash. She said the rash was so

4

bad she considered the condition to be indicative of marked parental indifference and contemplated calling the Kansas Department for Children and Families to report M.G. as neglected and in need of care. The therapist said she didn't do so because Payne told her M.G.'s mother had made a doctor's appointment.

The district court allotted each side 30 minutes to present closing arguments to the jury. Although the prosecutors focused their closing argument to the jury on the evidence regarding A.R., they discussed the evidence pertaining to M.G. as they wished within that time limit. Payne's lawyer also began his argument by looking at the evidence about A.R. He had barely begun to discuss the evidence related to M.G. when one of the prosecutors lodged an objection on the grounds his comments seemed to go beyond the evidence. The district court sustained the objection. Payne's lawyer recast the point and drew another objection. The district court again sustained the objection and immediately ordered Payne's lawyer to sit down without finishing his argument. We set out the exchange verbatim in our analysis of the legal error. One of the prosecutors then presented a rebuttal argument to the jury.

The jurors convicted Payne of raping M.G.—the charge on which they effectively heard no closing argument from her lawyer.

At a later hearing, the district court imposed a sentence of life in prison on Payne. She may be considered for parole from prison after serving 25 years. Payne has timely appealed.

LEGAL ANALYSIS

For her only issue on appeal, Payne challenges the district court's decision to cut off her lawyer's closing argument. She alleges undue prejudice based on the district court's characterization of the particular argument, the termination of any further defense

5

argument, and the limited evidence supporting the charge involving M.G. Before turning to the specific point, we offer some context drawn from the trial record.[1]

[1]The lawyer from the Appellate Defender Office handling this appeal did not represent Payne in the district court.

*District Court's Ruling Placed in Context*

Payne's lawyer took an approach to the trial that could be viewed as deliberately testing some rulings of the district court limiting the discussion of certain topics in front of the jury. Notwithstanding those rulings made both before and during the trial, the lawyer ventured into forbidden territory in the jury selection process, in his opening statement, and in questioning some witnesses. The prosecutors objected to much of that conduct, and the district court generally sustained the objections. Other times, Payne's lawyer would launch a line of questioning drawing an objection the district court sustained. The lawyer often seemed to pick up precisely where he left off, provoking renewed objections and further district court intervention. The particulars of those disputes have no direct bearing on the appeal, so we choose not to burden this opinion with a recitation of their substance. We may fairly conclude that over the course of the three-day trial, Payne's lawyer strained the patience of the prosecutors and the district court and left them exasperated.

The transcript does not contain timestamps, so we don't know exactly how long the prosecutors or Payne's lawyer spoke during their respective closing arguments. The prosecutors reserved 5 of their 30 minutes for rebuttal. The prosecutors' opening argument fills about 15 pages of transcript and the rebuttal about 3 pages. We have roughly estimated that to be about 25 minutes, depending on the pace of the argument, which is something we can't directly assess from the transcript.

In his argument, Payne's lawyer spoke first about the evidence related to A.R. That portion of the argument covers 10 pages in the transcript. He then turned to the evidence concerning M.G. and almost immediately drew the two objections that prompted the district court to terminate the argument. The immediate dispute and the district court's resolution of it unfolded this way:

> "[DEFENSE LAWYER]: . . . Most of the time [M.G.] was a happy, joyful child, but that there had been occasions in the past in which the child arrived despondent, clingy, upset, sick. I believe the inference may be more than physical. Something is going on with this child, and it may well be psychological. Now, I'm not going to stand here—
>
> "[PROSECUTOR]: Judge—
>
> "[DEFENSE LAWYER]: —and accuse—
>
> "[PROSECUTOR]: —I'm going to object to that.
>
> "THE COURT: Yeah. I'll sustain it and strike that because it's—that's speculation on something that's never been testified to at all. It's just you're dreaming about things, [defense lawyer], and—
>
> "[DEFENSE LAWYER]: Well, the jury can certainly make their own inferences.
>
> "THE COURT: Well, you're not to comment on things that are not part of the evidence that's been presented. There's been no evidence presented about psychological abuse, so don't comment on things that are just speculation.
>
> "[DEFENSE LAWYER]: You can draw your own inferences. I believe something's going on with this child, but it's not my intention to accuse—
>
> "[PROSECUTOR]: Judge—
>
> "THE COURT: All right.
>
> "[PROSECUTOR]: —the State—
>
> "THE COURT: You're done with your closing remarks, [defense lawyer]. Sit down."

The lawyer's reference to something "psychological" going on with M.G. appears to have no anchor in the trial evidence. So the prosecutor's initial objection was well-

7

taken. See *Biglow v. Eidenberg*, 308 Kan. 873, 894, 424 P.3d 515 (2018) (improper for lawyer to refer to facts not in evidence during closing argument); *State v. Thurber*, 308 Kan. 140, 162, 420 P.3d 389 (2018). Payne doesn't argue otherwise on appeal.

Payne does, however, take issue with the district court's remark that her lawyer was "dreaming." Payne has a point, though perhaps a minor one, on that score. While district courts have to maintain order during trials and must police the advocates' attempts to offer impertinent evidence or unsheathe improper arguments, they should do so professionally and without editorializing, sarcasm, or unduly extended disquisitions— forms of commentary jurors may misperceive as indicative of a judicial leaning toward one side and against the other. *State v. Kemble*, 291 Kan. 109, 114, 238 P.3d 251 (2010); *State v. Miller*, 274 Kan. 113, 128, 49 P.3d 458 (2002) ("When it becomes necessary during the trial to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, the judge should do so in a firm, dignified, and restrained manner, avoiding repartee, limiting comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues."); *State v. Hamilton*, 240 Kan. 539, 545, 731 P.2d 863 (1987). Use of the term "dreaming," albeit impromptu, probably oversteps the line separating good judicial practice from inadvisable ridicule. But Payne's lawyer exacerbated the situation and the impact of the district court's ruling on the initial objection by interrupting to further debate the point.

After that exchange, Payne's lawyer recast his argument to say simply that "something" was going on with M.G. That looks to be fair comment insofar as the undisputed evidence—principally the testimony of the pediatrician from Children's Mercy Hospital—showed that M.G. had been *physically* abused in a sexual way. That certainly qualifies as "something." And Payne presented testimony from two witnesses that M.G. seemed noticeably out of sorts. The prosecutor again objected, and the district

court not only sustained the objection but took the extraordinary step of ending the lawyer's closing argument on behalf of Payne.[2]

[2]The lawyer's use of the term "I believe" probably rendered part of the argument an expression of his personal opinion and, thus, technically objectionable for that reason. See *State v. Charles*, 304 Kan. 158, 175, 372 P.3d 1109 (2016) (prosecutor's repeated use of phrase "'I think'" in closing argument amounted to "verbal tic" to be avoided rather than genuinely improper argument based on deliberate expression of opinion about the evidence); *State v. Weber*, No. 102,572, 2010 WL 5139933, at *6 (Kan. App. 2010) (unpublished opinion) (use of "I believe" to preface point in closing argument likely improper). The lawyer simply should have omitted the phrase or referred to "the evidence" showing "something" to have been going on with M.G. We do not understand either the prosecutor's objections or the district court's rulings to be based on that flaw. That sort of technical error could not justify the termination of the argument. 2010 WL 5139933, at *6.

Payne's lawyer did not attempt to proffer the balance of his closing argument outside the presence of the jury after the district court ordered him to stop. So we don't know what he intended to focus on in discussing the evidence about M.G. or how much longer he might have spoken to the jurors. The transcript certainly indicates the lawyer still had a fair amount of his 30 minutes to outline potential avenues to reasonable doubt. His final refrain dismissing an "intention to accuse" might well have been a rhetorical cushion leading into a suggestion that M.G.'s mother or another family member had abused the child before she was brought to Payne's home that morning. In his opening statement, the lawyer had briefly alluded to someone other than Payne being M.G.'s abuser without more specifically identifying any suspects.

*District Court Erred in Terminating Closing Argument*

The propriety of the district court's decision to cut off the closing argument and the resulting prejudice to Payne depend upon no disputed facts. The circumstances are captured in the trial transcript and require no credibility determinations or resolutions of conflicting evidence. In that sense, we may independently assess what the district court did. Typically, however, district courts enjoy broad discretion in managing jury trials and

9

other proceedings, and their conduct will be reviewed for abuse of that judicial discretion. See *State v. McLinn*, 307 Kan. 307, 332, 409 P.3d 1 (2018) (considering scope of closing argument); *Harsch v. Miller*, 288 Kan. 280, 288, 200 P.3d 467 (2009) (general authority); *Hamilton*, 240 Kan. at 547 (trial proceedings). A district court may be said to have abused its discretion if the result it reaches is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same circumstances. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial decision lacks substantial support in the record. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013) (outlining all three bases for an abuse of discretion); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

We presume without deciding that the district court's ruling silencing Payne's lawyer in the midst of his closing argument should be reviewed for an abuse of discretion, since that would be the standard most deferential to the ruling. Even with that deference, the district court's decision fails under each ground establishing an abuse of judicial discretion. In short, the district court unquestionably erred in cutting off the closing argument.

Judicial impingement of a criminal defendant's closing argument implicates constitutional protections rooted in the right to counsel and the right to jury trial as guaranteed in the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. Those Sixth Amendment rights have been

10

incorporated through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and apply to criminal proceedings in state courts. *Herring v. New York*, 422 U.S. 853, 856-57, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). There is also a separate Fourteenth Amendment due process overlay associated with the deprivation of liberty that looms in a criminal case.

Under the Sixth Amendment, a defendant is entitled to be represented by a competent lawyer at all "critical stages" of a criminal case. *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009); *United States v. Cronic*, 466 U.S. 648, 654-55, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984); *State v. Jones*, 290 Kan. 373, 379, 228 P.3d 394 (2010). The right is a fundamental one essential to the fair adjudication of serious criminal charges. *Cronic*, 466 U.S. at 653-54. Closing argument to a jury is, not surprising, a critical stage of a criminal prosecution. *Herring*, 422 U.S. at 858 ("There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial."); *State v. Engelhardt*, 280 Kan. 113, 124, 119 P.3d 1148 (2005) (recognizing closing argument as critical stage in criminal trial). As the Court pointed out, "it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge." *Herring*, 422 U.S. at 858. We need not belabor the point and turn, instead, to the *Herring* Court's explanation of the necessary—indeed, critical—function of closing argument in a criminal case as a tool for extracting a just result from witness testimony and other evidence that sometimes may be confusing, contradictory, or even duplicitous:

> "It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the

11

defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." 422 U.S. at 862.

At the same time, however, those constitutional imperatives do not extend an entirely open forum to lawyers making closing arguments in criminal cases. 422 U.S. at 862; see *State v. Chambers*, No. 111,390, 2015 WL 967595, at *8 (Kan. App. 2015) (unpublished opinion) (recognizing and endorsing widespread case authority precluding defense lawyer from discussing concept of jury nullification in closing argument). As we have said, a district court may regulate closing arguments on both sides in a criminal case to promote an honest adjudication consistent with the defendant's right to a fair trial and the State's obligation to hold wrongdoers to account. But that regulation must be surgically applied to carefully excise any malignancy while preserving the constitutional protections extended to criminal defendants, particularly their right to counsel.

We now apply the standard for abuse of judicial discretion. First, the district court misperceived the revised argument that sparked the decision to terminate the closing argument. As we have described, Payne's lawyer improperly referred to M.G.'s "psychological" condition, something falling outside the trial evidence. Upon the prosecutor's sustained objection, the lawyer rephrased the argument to refer to M.G.'s condition more generally, consistent with the testimony that she was unusually sedate and clingy. That much of the lawyer's revised remark entails fair comment on the evidence, notwithstanding the prosecutor's renewed objection. The district court should have overruled the second objection and, in turn, lacked a factual basis to terminate the closing argument. In other words, the district court grounded its decision in an erroneous factual predicate, since the argument no longer rested on information outside the evidence. Granted, the wording of the recast argument was quite similar to the wording of the objectionable argument, and the district court may not have appreciated the difference. But there was, in fact, a material difference. We don't see that the district court's possible

failure to appreciate the change renders the decision to terminate the argument any less an abuse of discretion, especially given the impact on Payne's fundamental rights.

The district court appears to have ruled almost reflexively in sustaining the prosecutor's renewed objection to the lawyer's revised argument that something was wrong with M.G. when she arrived at Payne's home. We see no indication the district court considered the constitutional implications of its decision to terminate the defense's closing argument. Nor did the district court appear to weigh and reject some lesser remedy.

We can't say for certain in this case but a stern rebuke at the bench often has a curative effect on a lawyer's improper conduct. More pointedly, a district court could admonish a lawyer in front of the jury for serial misconduct, especially in the face of earlier rulings addressing the same sort of bad behavior. See *State v. Wells*, No. 104,433, 2012 WL 3000340, at *6 (Kan. App. 2012) (unpublished opinion) (noting curative effect of district court admonishing prosecutor in front of jury). A district court could separately punish a lawyer's flagrantly contumacious trial conduct in defiance of clear orders or procedural rules as direct criminal contempt—resulting in a fine, incarceration, or nonmonetary sanctions such as completion of a legal education program. See *State v. Jenkins*, 263 Kan. 351, 354-60, 950 P.2d 1338 (1997) (discussing scope of contempt proceedings against lawyers for conduct in representing clients); *In re Sanborn*, 208 Kan. 4, 14-15, 490 P.2d 598 (1971).

The district court here simply (and improvidently) abandoned any sequential steps to fix the perceived deficiency in the closing argument and essentially turned immediately to an extraordinary remedy that jeopardized Payne's constitutional rights. Even if Payne's lawyer's recast argument were still improper, the district court's decision appears to have ignored and stepped outside the appropriate legal framework for

13

conducting criminal trials consistent with those constitutional rights. The decision amounted to an abuse of discretion for that reason.

Payne's lawyer did not give a closing argument riddled with objectionable remarks. The prosecutor lodged two earlier objections on what may be characterized as comparatively minor points. First, Payne's lawyer referred to the forensic interview techniques used with A.R., getting into an area the district court had restricted. The district court sustained the prosecutor's objection. Second, the prosecutor complained that Payne's lawyer had mischaracterized part of her opening argument to the jury. The district court agreed without formally ruling on the objection and suggested the lawyer confine his discussion to the evidence. Those exchanges were the stuff of everyday trial disputes—not grossly excessive or patently improper comments tending to undermine the integrity of the trial process. Payne's lawyer had not turned his closing argument into a guided missile aimed at blowing up the trial.

Similarly, the district court could not have terminated the closing argument as some sort of "ultimate sanction" based on the cumulative conduct of Payne's lawyer in trying the case. The district court presumably took those steps it believed were necessary to remedy each of the lawyer's earlier transgressions. As a result, the district court had no justification for a disproportionately harsh response to the lawyer's relatively mundane comments about M.G.'s condition when she arrived at Payne's home, even if both comments were improper (although we view only the first as objectionable).

In looking at the final way a district court may abuse its discretion, we take account of all of the circumstances surrounding the particular decision being challenged. Here, that view encompasses at the very least the closing arguments both the prosecutors and Payne's lawyer delivered and more broadly how the three-day trial was generally conducted. From either of those vantage points, we conclude—and do so without reservation—that a reasonable judge would not have prevented Payne's lawyer from

14

continuing his closing argument to the jury. We decline to speculate about why the district court felt the need to shut down the argument. The district court neither stated a reason at the time nor said anything else that could be parsed for some insight into the ruling. In short, the district court's action was patently unreasonable and, therefore, amounted to an abuse of discretion on that ground.

Although Payne has asserted that the district court's dismissive comment to her lawyer that he was "just . . . dreaming about things" in his closing argument amounts to a freestanding error requiring reversal, we set that contention aside. The district court's choice of words left something to be desired, especially in front of the jurors. But any possible error pales next to the district court's decision to cut off the argument moments later. So we need not and do not say more about that specific claim except to observe that it would be analyzed under the test the Kansas Supreme Court recently adopted for "judicial comment error." *State v. Boothby*, 310 Kan. ___, ___ P.3d ___, 2019 WL 4230521, at *4 (2019).

Even giving the district court the benefit of the deferential abuse of discretion standard, we find obvious error in terminating Payne's lawyer's closing argument. We next turn to the matter of the remedy, if any, due Payne.

*District Court's Error Deprived Payne of Fair Trial*

Payne argues that the district court's errors in commenting on and then terminating her lawyer's closing argument deprived her of a fair trial, given the comparatively limited circumstantial evidence the State offered to show she sexually abused M.G. and the countering evidence she presented. Payne relies on a remarkably cursory outline of the evidence and the resulting prejudice. We consider only the termination of the closing argument and offer a more detailed analysis of possible prejudice.

15

The parties have not presented the appellate issue as if it involved structural error requiring reversal of Payne's conviction without a showing of actual prejudice. See *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (Structural errors "infect the entire trial process" and "deprive defendants of 'basic protections'" essential to the reliable functioning of the criminal justice process; as such, they "defy harmless-error review.") (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 [1986]). We suppose the parties have correctly framed the issue. See *Neder*, 527 U.S. at 8 ("complete denial of counsel" deemed structural error); but see *Glebe v. Frost*, 574 U.S. 21, 135 S. Ct. 429, 430-31, 190 L. Ed. 2d 317 (2014) (Court assumes without deciding *Herring* recognizes denial of closing argument as structural error but holds trial court restriction on content of argument subject to harmless error review).

As we have explained, the district court's ruling prevented Payne's lawyer from presenting any closing argument to the jury on the evidence concerning M.G. The prosecutors, however, had the opportunity to argue how the evidence about A.R. established Payne's guilt on that charge and how the evidence about M.G. established her guilty on that charge. The jurors were instructed that they should consider the evidence on each charge separately and should return a verdict on each charge based only on the law and evidence related to it. See PIK Crim. 4th 68.060 (jury instruction to consider evidence on each count independently of evidence on other counts); *State v. Cruz*, 297 Kan. 1048, 1057-58, 307 P.3d 199 (2013) (recognizing instruction like PIK Crim. 4th 68.080 as effective tool directing jurors' consideration of evidence in cases involving distinct criminal episodes charged as separate counts). So the closing arguments on each charge would have served a separate and distinct role in aiding the jurors in reaching a verdict on that charge. But the district court deprived Payne of that opportunity with respect to M.G. In this case, given the limited (and disputed) evidence of Payne's guilt on the charge she sexually abused M.G., she has shown actual prejudice resulting from her

16

lawyer's inability to argue why the jurors should have had a reasonable doubt about the State's proof of her guilt. And the State has not shown the error to be harmless.

In *Ward*, 292 Kan. 541, Syl. ¶ 6, the court outlined the standard for harmless error when a criminal defendant's constitutional rights have been compromised during a trial: The State, as the party benefiting from the error, must show beyond a reasonable doubt that the error did not affect the outcome in light of the overall record. Here, the State attempts to satisfy that heavy burden simply by pointing to the jury's split verdict finding Payne not guilty as to A.R. and guilty as to M.G. The argument is unpersuasive.

Kansas appellate courts occasionally point to split verdicts to suggest a jury has not been unduly influenced by a prosecutor's improper remarks or otherwise caught up in an emotional furor to convict for some other impermissible reason. See *State v. Tosh*, 278 Kan. 83, 91-92, 91 P.3d 1204 (2004); *State v. Miller*, No. 109,716, 2015 WL 3632029, at *13 (Kan. App. 2015) (unpublished opinion); *State v. Baker*, No. 96,979, 2008 WL 440683, at *4 (Kan. App. 2008) (unpublished opinion). In some cases, those may be reasonable suppositions. But reading the tea leaves of a jury's mixed verdicts on multiple counts against a defendant is fraught with inexactitude and guesstimating as a general exercise, especially given the breadth of considerations that may influence deliberations in any particular case. See *United States v. Powell*, 469 U.S. 57, 64-67, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (outlining reasons appellate courts should avoid drawing inferences from seemingly inconsistent verdicts in a criminal case); *State v. Hargrove*, 48 Kan. App. 2d 522, 559-60, 293 P.3d 787 (2013). The split-verdict rationale for harmlessness can, at best, be applied only to errors that infect the overall trial process, such as a prosecutor's impermissibly inflammatory argument to convict based on passion or prejudice rather than the evidence. A not guilty verdict on one or more charges arguably suggests the jurors did not fall sway to the argument in convicting on other charges—although they actually might have acquitted on more charges but for the impropriety.

17

But split verdicts say nothing about a serious trial error that affects only a count on which the jurors convicted the defendant. By definition, that sort of error would not have influenced the jurors one way or the other in finding the defendant not guilty on other counts. This case illustrates the point and, thus, the insufficiency of the State's argument for harmlessness. The district court's ruling prematurely terminating Payne's lawyer's closing argument affected only the charge related to M.G.—that's the one he never got to discuss with the jurors. The lawyer presented all or nearly all his comments about why the jurors should have a reasonable doubt Payne abused A.R. And they agreed with him. Nothing about the not guilty verdict, however, suggests the jurors would have convicted Payne of abusing M.G. even if her lawyer got to present his closing argument on that charge. Given the limited evidence as to M.G., the split verdict could just as well obliquely support the opposite conclusion.

As we have said, the State offered nothing that could be characterized as damning evidence Payne abused M.G. No eyewitness testified to any abuse. Payne did not confess. To the contrary, she consistently maintained her innocence during the investigation and took the stand to tell the jurors so during the trial. There was no forensic evidence, such as DNA, to support the charge. And there was no "smoking gun" evidence like videotapes some child molesters make to document their misdeeds. See, e.g., *State v. Cessna*, No. 115,999, 2018 WL 386844, at *1 (Kan. App. 2018) (unpublished opinion); *State v. Rae*, No. 111,195, 2015 WL 4879043, at *1 (Kan. App. 2015) (unpublished opinion). The State presented only a slender circumstantial case against Payne.

On appeal, the State has advanced neither a comprehensive nor a compelling reading of the record convincing us beyond a reasonable doubt that Payne necessarily would have been convicted of abusing M.G. if her lawyer had been permitted to argue the limitations, indeed the outright fragility, of the case against her. The district court's error in depriving Payne of a closing argument on that charge compromised her fundamental constitutional rights and cannot be dismissed as harmless. The remedy requires we

18

reverse Payne's conviction, vacate her sentence, and remand the case to the district court with directions to grant Payne a new trial on the rape charge involving M.G.[3]

[3]The jury's not guilty verdict on the charge involving A.R. remains intact and is unaffected by our decision to reverse the guilty verdict as to M.G. See K.S.A. 2018 Supp. 21-5110(a)(1); *City of Salina v. Amador*, 279 Kan. 266, Syl. ¶ 3, 106 P.3d 1139 (2005) (constitutional protection against double jeopardy precludes "a second prosecution for the same offense after acquittal").

We close with an observation about an issue that remains unresolved in light of our determination that the district court erred in cutting off Payne's lawyer's closing argument: Are there circumstances in which a district court could terminate a defendant's closing argument in a criminal case without committing error? We presume so. A district court almost certainly must hold that inherent authority, although its actual exercise ought to be a truly exceptional rarity built upon exacting considerations for the defendant's fundamental right to a fair trial. See *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010) (noting "district court's inherent authority to manage the course of trials" in context of entering orders in limine); *State v. Williams*, 259 Kan. 432, 446, 913 P.2d 587 (1996) (court holds authority to insure "orderly progress" of case and cannot be "thwarted and obstructed" in that mission by a criminal defendant's conduct). That is to say, it should be a remedy of last resort. Here, the district court hurled its lightning bolt without having issued a thunderstorm warning.

Suppose, for example, a defense lawyer persists in arguing to the jurors they can disregard the law and the evidence to bring back a not guilty verdict, even though the district court has sustained repeated objections from the prosecutor and admonished the lawyer. The argument is plainly improper, and the lawyer's continuing conduct likely amounts to contempt of court and an ethical violation. Neither a contempt penalty nor some form of ethics sanction would resolve the immediate problem posed during the trial.

19

The district court could, of course, continue sustaining objections and trust the good sense of the jurors to recognize the lawyer's improper conduct for what it is and to ignore the argument. We think, however, the district court would act within its discretion to inform the lawyer, perhaps at the bench though definitely on the record, that he or she needs to move on to any other points he or she intends to make to the jurors because the next reference to jury nullification will signal the absence of any other points and result in an order immediately terminating the closing argument. Having duly informed the lawyer of the consequences of persisting with the improper argument, the district court could then act on the warning consistent with its discretionary authority.[4]

[4]A recalcitrant criminal defense lawyer presents the district court with fewer good corrective options than does a prosecutor or the advocates in a civil action. A mistrial might be an appropriate remedy, especially if the aggrieved party concurred. But a criminal defendant facing likely conviction would almost certainly prefer a mistrial to submitting the case to the jury. And a district court can grant a new trial to redress the improper conduct of a prosecutor or civil litigants. A not guilty verdict cannot be set aside. See K.S.A. 2018 Supp. 22-3501(1) (criminal defendant may move for new trial "in the interest of justice"; no comparable right for State on not guilty verdict). Moreover, a district court's proper decision to cut off a defense lawyer's closing argument raises the specter of a defendant's claim for ineffective assistance of counsel in a later motion for habeas corpus relief under K.S.A. 60-1507.

We close by summarizing our decision. Based on the district court's abuse of discretion in terminating Payne's lawyer's closing argument—an error that cannot be considered harmless given the record evidence in this case—we reverse Payne's conviction, vacate her sentence, and remand with directions she be granted a new trial.