(997 P.2d 98)

No. 82,888

In the Matter of the Adoption of J.A.B., Jr.

—

Opinion filed February 4, 2000.

*Stephen B. Angermayer* of Fern & Angermayer, L.L.C., of Pittsburg, for the appellant.

*Gilbert Ernest Gregory*, of Fort Scott, for the appellee.

Before PIERRON, P.J., LEWIS, J., and JENNIFER L. JONES, District Judge, assigned.

PIERRON, J.: K.L.G. is the natural mother of J.A.B., Jr., born February 23, 1988. J.A.B., Jr.'s natural father died prior to J.A.B., Jr.'s birth. Gilbert Gregory and K.L.G. are married and Gregory has been a stepfather to J.A.B., Jr. Linda and Alvin Metcalf are the maternal grandparents. Dr. Vernon A. Berkey is J.A.B., Jr.'s paternal grandfather.

On August 31, 1998, Linda Metcalf filed a petition for appointment of a guardian and conservator and for issuance of letters of emergency guardianship over J.A.B., Jr. She alleged that he was in need of a guardian and conservator due to abandonment and neglect by K.L.G., and the inability of K.L.G. to provide for the care and well-being of J.A.B., Jr., as a result of substance abuse and her physical and mental condition. The court granted an emergency guardianship to Metcalf and suspended K.L.G.'s right to exercise care, custody, and control of J.A.B., Jr., during the pendency of the proceeding. At the time, J.A.B., Jr., was residing with Gregory and he continued to reside there with the authority of Metcalf.

On September 9, 1998, the State initiated a care and treatment proceeding against K.L.G. alleging she was addicted to cocaine. K.L.G. filed a written request for an order of referral for short term treatment which the court granted. K.L.G. began treatment at the Addiction Treatment Center on September 10, 1998. On September 28, 1998, upon the court's own motion, K.L.G. was ordered to continue her care and treatment at a halfway house.

On December 1, 1998, Berkey, together with three of J.A.B., Jr.'s paternal aunts, filed a child in need of care (CINC) petition. The petition alleged that J.A.B., Jr., had been abandoned; had been physically, mentally, or emotionally abused and neglected or sexually abused; and was without adequate parental care, control, or subsistence necessary for his physical, mental, and emotional health. The petition detailed K.L.G.'s numerous changes of residence, how she had misappropriated funds from her late husband's estate, and her drug addiction.

On December 8, 1998, Gregory filed a petition for stepparent adoption of J.A.B., Jr. Attached to the petition was a written "Consent of Mother to the Adoption of Minor Children" dated November 23, 1998. K.L.G's consent to the adoption was executed before a district judge on that date.

At a CINC proceeding on January 8, 1999, the petitioners filed a motion to find K.L.G. to be unfit to parent J.A.B., Jr., and to appoint a permanent guardian. Again, the motion detailed K.L.G.'s numerous changes of residence, how she misappropriated funds from her late husband's estate, her drug addiction, and how she left her children with Gregory for weeks at a time.

On January 8, 1999, the district court held a scheduling conference covering all of the related cases. The court requested that the parties submit briefs regarding their positions as to how each case should proceed and whether Berkey, as a grandparent, had standing to participate in the adoption procedure.

On February 4, 1999, the district court issued a letter order granting the stepparent adoption to Gregory. The court found all parties had agreed that Gregory was an appropriate person to adopt J.A.B., Jr., Gregory had physical custody at the time the CINC proceeding was filed, the status of adoptive parent would entitle

Gregory to certain consideration by the court in the CINC case, and his presence in the marital home would affect how the court approached issues concerning the natural mother. The court concluded that the CINC proceeding did not take precedent over the adoption proceeding on the limited legal issue of whether a legal relationship should be created between the child and the prospective adoptive parent. The court also found that Berkey had standing in the adoption proceeding only on the issue of reasonable visitation rights. Gregory was added as a necessary party in the CINC case, and the guardian and conservatorship proceeding was ordered pending until resolution of the CINC case.

On February 16, 1999, Gregory filed a decree of adoption setting forth the court's February 4, 1999, letter order. The decree was signed only by Gregory's attorney. The order does not have the signatures of any other counsel and was not circulated to other counsel. The decree incorrectly states that Berkey appeared with counsel on February 16, 1999. On February 24, 1999, the court entered a nunc pro tunc order reflecting that J.A.B., Jr.'s name would remain unchanged after the adoption. This order was not circulated or approved by other counsel.

Berkey appeals the granting of the adoption.

First, Berkey argues the trial court erred in not requiring the CINC case to be heard prior to granting the stepparent adoption.

Generally, our standard of review in adoption cases is to determine whether there is substantial competent evidence to support the trial court's findings. *In re Adoption of K.J.B.*, 265 Kan. 90, 95, 959 P.2d 853 (1998). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999).

Berkey argues the present case is similar to *In re K.W.*, 24 Kan. App. 2d 724, 726, 953 P.2d 229 (1998). There, the parents of a 2-month-old child took him to the hospital because he had been vomiting all day and had become limp and unresponsive. The father admitting to shaking the child in an attempt to arouse him. The examining doctors stated the child had sustained brain injuries

consistent with injuries inflicted by shaken baby syndrome. The State filed CINC proceedings and the child was taken into protective custody and, later, into temporary custody by Kansas Department of Social and Rehabilitation Services (SRS). 24 Kan. App. 2d at 724.

Criminal charges were filed against the father for causing the child's injuries. However, the charges were later dismissed for insufficient evidence. Although the State requested a CINC adjudication hearing for the child, the trial court never conducted a hearing. Five months after the infant had been taken into protective custody, the court ordered that he be returned to his parents. The court based its decision on the expert testimony at the father's preliminary hearing, the evidence that no new charges were pending, and the belief that the child was the responsibility of the parents. The child died approximately 1 year later.

The *In re K.W.* court addressed the single issue of whether the Kansas Code of the Care of Children (KCCC) demands an adjudication hearing by the trial court before returning a child to the natural parents when an interested party had filed a CINC petition. The clear purpose of the KCCC is to protect children who have been abused or neglected. K.S.A. 38-1521. The provisions of the KCCC are liberally construed to fulfill this purpose. K.S.A. 38-1501. The *In re K.W.* court concluded: "When an interested party has filed a child in need of care petition and there has been no stipulation resolving this matter, the trial court is required to conduct an adjudication hearing." 24 Kan. App. 2d 724, Syl. ¶. The court stated that to hold otherwise would undermine the entire framework of the KCCC and would prevent the State from carrying out one of the main purposes of the KCCC—to protect children who had been abused or who could potentially be abused. 24 Kan. App. 2d at 727.

Applying *In re K.W.* to the case at bar, Berkey argues the trial court failed to carry out the mandates of the KCCC. He contends there were ample facts before the court regarding the potential for abuse at the hands of K.L.G., yet the court allowed her husband to adopt J.A.B., Jr., without first adjudicating the CINC case which

"in all likelihood would have wrested custody from K.L.G. *and* her husband."

Gregory argues *In re K.W.* is factually not applicable. He argues that custody of J.A.B., Jr., was never removed from K.L.G. in the CINC proceeding since the child was already living with Gregory, that the CINC case is still active and pending, and that the public policy of the KCCC to protect children was adequately fulfilled by appointing an emergency guardian and by assuring care and treatment of K.L.G. Gregory maintains that even if the adoption had not been granted prior to the CINC proceeding, it is very likely, if not certain, that the court would have awarded temporary custody to Gregory anyway due to the existing relationship and existing placement.

Gregory argues his suitability to be an adoptive father to J.A.B., Jr., has never been challenged at any time by any party and points out that Berkey even requested in the CINC case that Gregory be given temporary protective custody of J.A.B., Jr. Gregory agrees with the trial court that Berkey has sustained no harm in the granting of the adoption. He says the CINC case can continue on the issue of K.L.G.'s fitness, but the issue is probably moot.

Gregory notes there is no legal authority prohibiting the granting of the adoption prior to resolution of the CINC case. He states that granting the adoption would be conducive to a return to the same family unit which existed prior to the petition with K.L.G. having successfully completed treatment and recovery.

This case involves a stepparent adoption. It is not an agency adoption or an independent adoption. A stepparent adoption is the adoption of a minor child by the spouse of a parent with the consent of that parent. This is not a situation where a couple has divorced and later remarried or a case where one of the natural parents has failed to assume parental duties for 2 consecutive years prior to the filing of the adoption.

Nearly one million children a year become stepchildren. In most states, stepparents have no clearly defined legal right or obligations regarding stepchildren. 1 Elrod, Kansas Family Law Handbook § 6.021, p. 6-3 (1990). If both natural parents are still living, a stepparent adoption involves terminating only one of the natural par-

ent's rights. The rights of the parent whose spouse is adopting the children remain intact. K.S.A. 59-2118(b) provides that "[u]pon adoption, all the rights of birth parents to the adopted person, including their right to inherit from or through the person, shall cease, *except the rights of a birth parent who is the spouse of the adopting parent.*" The Kansas statutes encourage stepparent adoptions in hopes of continuing a family unit which in most cases is conducive to a child's well-being.

In this case, we are also cognizant of a trial court's authority to control the proceedings in its court. District judges must have discretion to control the courtrooms of this state. See *State v. Williams*, 259 Kan. 432, 446, 913 P.2d 587, *cert. denied* 519 U.S. 829 (1996). Similarly, a district judge must have discretion to control the method of how it will proceed in related cases. Judicial discretion is abused when no reasonable person would take the view adopted by the trial court. *McKissick v. Frye*, 255 Kan. 566, 577, 876 P.2d 1371 (1994).

The trial court found that it would be preferable to have Gregory participate in the CINC case as the adoptive father as opposed to another party having custody of J.A.B., Jr., at the time the CINC case was filed. The court correctly recognized it was dooming Berkey's case in finding that the strengths and stability that Gregory would provide to the home as both husband and father would significantly have an impact on the CINC case and its subsequent resolution. The court stated:

"Nor does the Court believe that the CINC proceeding takes precedence over the adoption proceeding on the limited legal issue of whether a legal relationship should be created between the child and the prospective adoptive parent. The CINC case will continue, the juvenile court will exercise its jurisdiction with respect to the best interests of the child. Nothing about the adoption order divests the juvenile court of jurisdiction or even attempts to do so. The CINC case proceeds to resolve the issues prompting the filing of the case. The adoption case has merely added another party to that process.

"The Court sees no harm in such an approach. This is a stepparent adoption. The child has lived in the Gregory home for some time. The natural father of the child is dead. The allegations of the CINC case are aimed at the care of the child provided by the natural mother. If the CINC case cannot resolve issues with respect to the mother's care of the child, the Court will look to the father of the child. Why not have that father in place in this case should that be necessary."

Trial courts must be vigilant in making sure the best interests of the child are served when more than one legal action involving the child's welfare is pending. Here, we believe the court was aware of what was going on and carefully proceeded properly.

We find Berkey's reliance on *In re K.W.* to be unpersuasive. K.W. was taken into protective custody and then returned to the natural parents, who were suspected of abuse, without an adjudication hearing. In the case at bar, custody of J.A.B., Jr., has remained the same from the first judicial filing. The CINC case is still active and pending, and the public policy of the KCCC to protect children was followed by appointing an emergency guardian and assuring care and treatment of K.L.G.

We also stress that each adoption must be judged on its own unique set of facts. See *In the Interest of A.R.M.*, 750 S.W.2d 86, 89 (Mo. App. 1988). We find the trial court did not err in allowing the adoption to be completed prior to resolution of the CINC case.

Next, Berkey argues K.L.G. could not give valid consent to the adoption while her parental rights had been suspended under the emergency guardianship and while a care and treatment proceeding and a CINC proceeding were pending.

Berkey contends that when K.L.G. signed the consent, she was still subject to the emergency guardianship proceeding and lacked the ability to give valid consent. The letters of emergency guardianship stated "the rights of the natural mother [K.L.G.] to exercise care, custody and control of said minor children [are] suspended during the pendency of this proceeding or until further order of the court." Berkey points out that even the court in its February 4, 1999, ruling held that the guardian and conservatorship proceeding would be pending until resolution of the CINC case. Berkey argues that although the court did not give a definition of "control" in the granting the emergency guardianship, he argues it is inconceivable that any definition of "control" would not include suspension of a parent's right to consent to the adoption of a child. Berkey argues K.L.G.'s consent was invalid and void.

Further, Berkey argues K.L.G. was subject to a care and treatment proceeding for being a drug abuser who was incapacitated by drugs. Berkey argues Kansas adoption law holds that the receipt

and recognition of valid consent to adoption is of paramount importance. Berkey cites *In re Adoption of J.H.G.*, 254 Kan. 780, 869 P.2d 640 (1994), and K.S.A. 59-2114 for authority that consent must be freely and voluntarily given. He also cites the definition of "consent" in Black's Law Dictionary 305 (6th ed. 1990) where the definition contemplates a "voluntary agreement by a person in the possession and exercise of sufficient mental capacity to make an intelligent choice to do something proposed by another." Berkey concludes that it is difficult to conceive of K.L.G., a ward of the court, incapacitated by drugs, and having had parental control of her children temporarily suspended, as meeting Black's definition of ability to consent.

K.S.A. 59-2114(a) controls the parameters of a consenting party in an adoption case:

"Consent shall be in writing and shall be acknowledged before a judge of a court of record or before an officer authorized by law to take acknowledgments. If consent is acknowledged before a judge of a court of record, it shall be the duty of the court to advise the consenting person of the consequences of the consent. A consent is final when executed, unless the consenting party, prior to final decree of adoption, alleges and proves by clear and convincing evidence that the consent was not freely and voluntarily given. The burden of proving the consent was not freely and voluntarily given shall rest with the consenting party."

The court in *In re Adoption of Irons*, 235 Kan. 540, 684 P.2d 332 (1984), discussed the general concepts of valid consent. The court stated that when a consent to adoption is properly acknowledged, the acknowledgement serves as prima facie proof of the validity of the consent and that the written consent was freely and voluntarily given. See 1 Elrod, Kansas Family Law Handbook § 6.032B (1990); *In re Adoption of Trent*, 229 Kan. 224, 228, 624 P.2d 433 (1981). In order to rebut the presumption of validity there must be a showing of fraud, duress, undue influence, mistake or lack of understanding. See *In re Adoption of Chance*, 4 Kan. App. 2d 576, 583, 609 P.2d 232, *rev. denied* 228 Kan. 806 (1980).

In the present case, the trial court found that K.L.G. gave a free and voluntary consent to the adoption. Our review is to determine whether there is substantial competent evidence to support this finding. See *In re Adoption of Chance*, 4 Kan. App. 2d at 583.

Berkey argues K.L.G.'s consent was invalid because she was a ward of the court, incapacitated by drugs, and her parental control of her children had been temporarily suspended. He has the burden to prove that K.L.G. lacked the capacity to consent at the time she executed the consent. Berkey has set forth nothing more than assertions of incapacity and no specific evidence that at the time K.L.G. stood before the court, she lacked the capacity to consent. See *e.g., In re Adoption of Irons*, 235 Kan. at 547 (The mere assertion of undue influence, however, is not sufficient to shift the burden of proof. The existence of such influence must be proved by the one asserting it.) 25 Am. Jur. 2d, Duress and Undue influence § 38).

Here, the trial court sided with Gregory as to K.L.G.'s capacity to consent finding that her consent was freely and voluntarily given. Gregory states that K.L.G. had successfully completed inpatient treatment for substance abuse and completed nearly a month of continued recovery at the halfway house. The consent was executed before a district court judge prior to the filing of the CINC proceeding. Later, the consent was approved by the court, which granted the adoption with full knowledge of the emergency guardianship and the care and treatment proceeding.

We do not find that the letters of emergency guardianship suspended K.L.G.'s legal rights to J.A.B., Jr. Clearly, basic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States. The right to be the legal parent of a child is one of these rights, which cannot be abrogated except for compelling reasons, normally a showing that the natural parent is unfit. See *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1978); *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972); *In re Cooper*, 230 Kan. 57, 631 P.2d 632 (1981).

It is not merely splitting hairs to say that while K.L.G.'s *right to exercise* care, custody, and control over J.A.B., Jr., was temporarily suspended, the *legal relationship* between them as mother and son was fully intact. The only way to sever this legal relationship would be to terminate K.L.G.'s parental rights. This issue does not concern the various nuances of the definition of control, but whether

K.L.G. had the authority to exercise rights she still retained. K.L.G. still retained the legal authority to give consent to the adoption.

K.L.G. did not consent to an independent or even an agency adoption. She consented to a stepparent adoption in a situation where the other natural parent is deceased. J.A.B., Jr., has been living with the stepparent, Gregory, for quite some time. No one has ever challenged Gregory's fitness or his ability to be a parent to J.A.B., Jr. Different facts could lead to different results.

Next, Berkey argues he had standing to contest the adoption. He argues that since the trial court is required under K.S.A. 59-2134 to consider all evidence offered by any interested party in considering an adoption petition, it is contrary to the intent of the statute to conclude that he does not have standing in the adoption case. Berkey also argues that since he received notice of the adoption pursuant to K.S.A. 59-2133(b), he has standing to contest the adoption. He claims the purpose of notice is to allow any party to present any defense and to hold otherwise would not give notification any purpose and it would amount to little more than a court ritual. Berkey contends all the cases involved in this situation are inextricably linked and he should have standing in all the cases.

Gregory argues there is no statute that confers standing upon a grandparent in an adoption, or interested party status, or requires a grandparent receive notice of the proceedings. Gregory argues Berkey was given notice of the proceedings to permit him to pursue rights of visitation, which has never been opposed. He maintains that notice of the adoption to Berkey did not automatically confer upon him interested party status, which is within the discretion of the trial court. Gregory contends the court considered the entire situation and did not abuse its discretion in holding that Berkey had standing only on the issue of reasonable visitation. We agree.

Berkey cites no Kansas authority which provides that a grandparent has standing to contest an adoption. A grandparent's rights in an adoption of a grandchild are purely the province of statute. A grandparent has no natural or common-law rights to grandchildren. *Browning v. Tarwater*, 215 Kan. 501, 504, 524 P.2d 1135 (1974); *In re Johnson*, 210 Kan. 828, 831-32, 504 P.2d 217 (1972); *In re Bullen*, 28 Kan. 557, 560 (1882). The law of adoption is de-

pendent on state statutory law. *In re Estate of Robbins,* 241 Kan. 620, 623, 738 P.2d 458 (1987). We have unlimited review of conclusions of law. *U.S.D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 140, 785 P.2d 993 (1990).

K.S.A. 59-2133(b) provides: "In independent and stepparent adoptions notice of the hearing on the petition shall be given to the parents or presumed parents, unless parental rights have been previously terminated, and any other persons as the court may direct." K.S.A. 59-2133(b) does not specifically list the persons the court should give notice to, but instead gives the court discretion in selecting participants in the adoption hearing and related issues. Contrary to Berkey's argument, notice of the hearing does not give a complete right to participation in the hearing. Berkey argues notice becomes an anomaly if the party receiving the notice cannot fully participate in the proceedings. We disagree.

Notice is given to parties to insure the protection of that party's rights. See generally *Clarke v. City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975) (The purpose of statute requiring notice of a city's intention to annex territory and opportunity to be heard is to protect the rights of landowners against unilateral action by city in annexing their land.); *Crane v. Mitchell County U.S.D. No. 273,* 232 Kan. 51, 56, 652 P.2d 205 (1982) (The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case.). However, each party does not have the same rights in the action. Standing to participate in the proceedings is limited by the rights of the party.

Here, the grandparents' rights in the adoption proceeding are limited to a determination of whether reasonable visitation should be granted. K.S.A. 38-129 addresses the visitation rights of grandparents. It provides that the trial court may grant grandparents reasonable visitation rights if it would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established. K.S.A. 38-129(b) specifically gives the right to seek visitation to the parents of a deceased person even if the surviving spouse has remarried and the surviving parent's spouse has adopted the child, which is the situation in the

case at bar. See *In re Adoption of J.M.U.*, 16 Kan. App. 2d 164, 165-66, 819 P.2d 1244, *rev. denied* 250 Kan. 805 (1991).

We find the trial court did not err in holding that Berkey had standing to appear in the adoption proceeding, but only on the issue of whether reasonable visitation would be in J.A.B., Jr.'s best interest. In the subsequent decree of adoption, we note the court found that it was in the best interests of J.A.B., Jr., that visitation be allowed with Berkey and his wife, at such times and places as may be agreed upon by the parties.

Last, Berkey argues the procedure by which the adoption proceeding and the subsequent nunc pro tunc order were entered should cause the case to be reversed. Berkey argues that since he received notice of the proceedings and filed written defenses to the adoption, the final orders should have been submitted for his approval. Berkey contends that based on the improper and ex parte entry of these critically important and dispositive orders, the trial court should reverse the decree of adoption and remand the case for further proceedings in the CINC case.

Gregory responds that all parties voiced their positions at the scheduling conference and the trial court found that Berkey had standing in the adoption case only for reasonable visitation, and ultimately granted visitation in the decree. Berkey sustained no harm by the decree being approved without approval by counsel. Gregory also states that if the decree of adoption and the nunc pro tunc were incorrect, Berkey took no measures in the trial court to set aside, correct, or modify it.

We find no reversible error. Berkey contends the decree implies that he consented to the adoption. Upon review of the adoption decree, we fail to see this reference. The only error alleged by Berkey is that he was not present with counsel when the decree was entered. Berkey fails to explain how he was prejudiced by this alleged error or the failure to submit the decree for his approval. We find the claimed errors to be harmless. " 'Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for a reversal of a judgment and must be disregarded.' [Citation omitted.]" *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992).

Affirmed.