NOT DESIGNATED FOR PUBLICATION

No. 125,994

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of E.A.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RACHEL L. PICKERING, judge. Oral argument held July 11, 2023.  Opinion filed April 5, 2024. Reversed, decree vacated, and case remanded with directions.

*Joseph W. Booth*, of Lenexa, for appellant

*Martin W. Bauer*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, and *Allan A. Hazlett*, of Topeka Family Law, of Topeka, for appellees.

Before HILL, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

HILL, J.:  We are reviewing a grandfather's appeal of a district court's order denying him interested party status in his grandson's adoption case. More background facts are set out in a related parentage case, *In re E.A.*, 62 Kan. App. 2d 507, 509-10, 518 P.3d 419 (2022). Because we find the court's holding contrary to justice and our traditional notions of fair play, we reverse and remand with directions to the court to allow the grandfather to present his case to the court as an interested party. We make no comment about the merits of the case; we are simply ruling that the grandfather should be afforded an opportunity to present his case.

When young E.A.'s paternal grandfather turned him over to his paternal grandmother for a weekend visit, he had no idea that E.A. would never return to his

home, even though E.A. had been living with him for the last six years. E.A. did not return home because Grandmother made a preemptive legal strike against Grandfather. She swiftly, through a well-coordinated plan, took physical custody of E.A., filed to adopt him, and then obtained a restraining order against Grandfather. To complete her victory, she had the court file sealed so that Grandfather did not know of or even have access to what was happening in this adoption.

When Grandfather later struggled to make his case to the adoption court, the judge took no evidence on the matter. Further—after misconstruing a ruling made by a divided Kansas Supreme Court—the district court ruled that he, as a grandfather, could not enter the adoption case as an interested party, thereby closing the door to this case and to his grandson.

Our review of this case reveals that the district court stretched a general comment about grandparents from a plurality opinion of our Supreme Court to mean that grandparents are categorically not interested parties in adoption cases. When it did so, the court resolved a factual dispute without hearing a word of testimony.

The dispute is in plain view. Grandfather alleged that E.A. had lived with him for several years before the adoption petition was filed. Grandmother alleged E.A. was living with her when the petition was filed.

Both statements cannot be true.

By not taking testimony on the issue, the court denied Grandfather due process—the right to be heard. We hold that is reversible error. We vacate the adoption decree and remand the case to the district court for further proceedings.

*The battle begins when an adoption petition is filed in district court.*

In May 2019, Grandmother and her husband petitioned the Shawnee County District Court to adopt E.A. In doing so, they also sought to terminate the parental rights of his biological parents. The petition alleged that over the past five years preceding the petition, E.A. had lived only with Grandmother but periodically stayed with the biological parents (C.A. and J.B.) and at times with Grandfather. The petitioners stated that they knew of no person with physical custody of E.A. who was not a party to the proceedings. They attached written consents to the adoption from C.A. and J.B. The petitioners asked for a waiver of the requirement of a home study, alleging that E.A. had lived with them for most of his life.

Although Grandmother alleged to the court that E.A. had lived with her for most of his life, her counsel told the court that because Grandfather had physical custody of E.A., he only had a right to notice under K.S.A. 2022 Supp. 59-2133.

At the same hearing on the petition, the court granted Grandmother's request and placed E.A. in her temporary custody. She obtained this order over a weekend when Grandfather was allowing Grandmother to spend time with E.A. Grandmother's counsel told the court that without a custody order, Grandfather might take E.A. to Nicaragua. At the same time, they told the court that Grandfather is an attorney, "So I just wanted to make sure he didn't charge up and get his hands on the file." As a result, the court then denied Grandfather access to the adoption case file.

Custody of E.A. was apparently changed after one brief hearing with no one else present, where no testimony was offered nor received, and no home study was done. The person who had custody of E.A. now had no access to the child at all. And, as another barrier, Grandfather was denied access to the court file that could tell him what had been said or done in court and why the court changed custody ex parte.

3

*Grandfather tries to intervene in the adoption case.*

In response to the adoption petition filed by his former wife, Grandfather unsuccessfully pursued several legal theories. First, he petitioned to intervene as an interested party in the adoption. He contended that C.A. and J.B. had abdicated their parental rights and that they were unfit to parent.

Grandfather also tried—to no avail—to claim parenthood under the Kansas Parentage Act. He argued that due to Grandfather's contract with E.A.'s father (C.A.), C.A. had waived his right to parental preference. And Grandfather also pursued parenthood under the theories of de facto parent, equitable parent, psychological parent, and because he stood *in loco parentis* of E.A. for the last six years.

In summary, Grandfather argued the adoption court needed to determine his parentage under K.S.A. 2022 Supp. 59-2136 and the court should decide parenthood based on the best interests of E.A. He argued that he had standing based on his assumption of parenthood and the injury that would be caused to E.A. by taking him from his family.

At the hearing on Grandfather's motion to intervene, he argued that he had standing because of his parent-like relationship with E.A. Grandfather then tried to invoke constitutional due process. With that, the court took the issue of standing under advisement without hearing any evidence.

The court decided the issue of standing as a matter of law. It decided that because Grandfather did not qualify as a "party in interest" under K.S.A. 2022 Supp. 59-2112, he did not have statutory standing as required to intervene in the adoption. As a result, it denied Grandfather's remaining petitions as moot because he lacked standing.

4

In his brief in support of his petition to intervene, Grandfather argued that the district court had authority under K.S.A. 2022 Supp. 59-2401a and its *parens patriae* power to grant Grandfather interested party status. He maintained that he was a presumptive father under the Kansas Parentage Act and the biological parents had waived their parental preference. Grandfather argued that E.A.'s best interests should control and that the case presented extraordinary circumstances. He said that he was a de facto parent and due process required his participation in the adoption proceeding.

The next day, the district court entered a decree of adoption and termination of parental rights. Three days later, Grandfather filed a motion for reconsideration and to stay adoption proceedings. In the alternative, he also filed a notice of appeal of the decision denying him standing.

Moreover, Grandfather made a collateral attack. In a separate lawsuit, he claimed parentage of E.A. under the Kansas Parentage Act. That action was not consolidated with this adoption case and was decided by a different judge. We will discuss that case later.

Three years passed. Then, in July 2022, the district court issued a final order reaffirming that Grandfather was not an interested party and lacked standing to oppose the adoption. In its order, the court noted there was no Kansas case holding that a grandparent was an interested party or had parental status in an adoption proceeding. Claiming excusable neglect, Grandfather filed an untimely notice of appeal of the final order, arguing he did not get notice of the final order. He also contended since his earlier notice of appeal was premature, it took effect in response to the final order.

*We summarize the parentage case because it demonstrates the efforts made by Grandfather to regain custody of E.A.*

While the adoption was pending, Grandfather filed a separate action under the Kansas Parentage Act, K.S.A. 2021 Supp. 23-2201 et seq., and the holding in *Frazier v. Goudschaal*, 296 Kan. 730, 295 P.3d 542 (2013). He alleged he had "'openly and notoriously in writing'" acknowledged he was E.A.'s father. *In re Parentage of E.A.*, 62 Kan. App. 2d at 511. Therefore, he was entitled to a presumption of parentage under the Act. Grandmother and her husband opposed the parentage action. Both parties moved for summary judgment in the parentage case. The district court found that since Grandfather did not have standing in the adoption proceeding, he was prohibited from attacking the adoption because of the doctrines of collateral estoppel and res judicata. *In re Parentage of E.A.*, 62 Kan. App. 2d at 511.

Grandfather appealed the ruling in the parentage case to this court. In 2022, the panel affirmed the district court on other grounds than what the district court relied. The majority held that Grandfather's claim of paternity failed because he did not claim paternity at the time of the child's birth, and that the parentage issue should be decided in the pending adoption case. *In re Parentage of E.A.*, 62 Kan. App. 2d at 513-14. The concurring judge found Grandfather's parentage claim failed because (1) he admitted he was not E.A.'s biological father and (2) the journal entry filed by the district court in 2013 established C.A. as the biological father. *In re Parentage of E.A.*, 62 Kan. App. 2d at 533-34 (Atcheson, J., concurring).

The Kansas Supreme Court has granted Grandfather's petition for review. *In re Parentage of E.A.*, No. 123,710 (order filed November 22, 2022). But, in January 2023, upon learning the adoption might be appealed, the court cancelled oral arguments and ordered the parties to provide an update on the status of this adoption appeal. *In re*

*Parentage of E.A.*, No. 123,710 (order filed January 18, 2023). The parentage case remains pending with the Supreme Court.

*Can Grandfather legally bring this appeal?*

The parties' respective positions on this issue are poles apart. Grandmother argues that Grandfather cannot bring this appeal. He lacks standing. Grandfather responds with several diverse arguments.

Grandfather contends he presented a prima facie case for standing as a parent in the adoption proceeding because he had notoriously acknowledged parentage of E.A. under K.S.A. 23-2208(a)(4) and the biological parents consented to Grandfather's parentage of the child. Grandfather further argues the district court should have granted him interested party status using the court's *parens patriae* authority due to extraordinary circumstances. He argues C.A. and J.B. were not fit parents to give consent to the adoption; they had surrendered that role to Grandfather as the de facto parent. He argues the court was misled and did not protect E.A.'s best interests. And he argues the court should have granted him interested party status to protect his and E.A.'s due process rights.

Grandmother contends the district court correctly ruled Grandfather was not E.A.'s parent, citing the following:

- Grandfather never petitioned to adopt the child.
- Grandfather does not claim he could be the child's biological father.
- A 2013 judicial decree found C.A. and J.B. were the child's parents.
- C.A. and J.B. were never found be to unfit or had their parental rights terminated.
- C.A. and J.B. never waived their parental preference.

- The constitutional rights at issue belong to C.A. and J.B. as the biological parents.
- C.A. and J.B. selected Grandmother and her husband to adopt E.A.
- The adoption by Grandmother and her husband was finalized.

Grandmother also contends Grandfather lacks standing to appeal the adoption under K.S.A. 2022 Supp. 59-2401a because he was not the petitioner, granted interested party status by the district court, or E.A.'s parent.

Several points of law direct our analysis of this issue. First, "Standing is both a requirement for case-or-controversy and a component of subject matter jurisdiction that may be raised at any time. Standing can be lost." *In re L.L.*, 315 Kan. 386, Syl. ¶ 1, 508 P.3d 1278 (2022).

Secondly, adoption was not recognized at common law; it was created by statute. And the right to appeal in civil cases is statutory; it is not a right contained in the constitutions. Therefore, in order to appeal, Grandfather "must establish both statutory and common-law standing." *In re Adoption of T.M.M.H.*, 307 Kan. 902, 909-10, 416 P.3d 999 (2018).

Finally, statutory standing in an adoption case on appeal to this court is governed in part by K.S.A. 2022 Supp. 59-2401a(b)(1), which allows an "interested party" to bring an appeal from any final order, judgment, or decree in an adoption proceeding. Under K.S.A. 2022 Supp. 59-2401a(e)(1), (e)(7), or (e)(8), an interested party in an adoption proceeding could be:
- a parent,
- the petitioner, or
- "any other person granted interested party status by the court from which the appeal is being taken."

The statute does not include grandparents or legal custodians. *In re Adoption of T.M.M.H.*, 307 Kan. at 910-11.

Grandfather does not argue he was the petitioner in the adoption case. Indeed, Grandmother filed this adoption petition. He argues he is a parent and *should have been* granted interested party status by the district court.

In our view, the real question here is not whether Grandfather is a parent as he claims in this case and in the parentage act case but whether he can appeal the district court's denial of his motion to be an interested party. We certainly do not hold Grandfather to be a parent, but whether he is an interested party is a much different consideration.

*Grandfather is not making a claim just as a grandparent.*

Central to the district court's ruling in this adoption is its interpretation of the Kansas Supreme Court's ruling in *T.M.M.H.*, a plurality opinion. Plurality opinions serve as marker buoys warning of troubled, uncertain waters ahead. The law is not well settled on the varied parentage claims that can be made in contemporary society.

Going further, the *T.M.M.H.* opinion is like a broken looking glass. Each shard of the opinion reflects only a glimmer of what one or two justices are thinking. It offers no view of the collected thoughts of the court. Other than its final holding, the separate opinions offer little binding precedent. Advocates use the broken shards reflecting the various opinions of the different justices as support for their own positions. But those views are separate and not controlling. They serve as persuasive illustrations of a line of reasoning and not an example of controlling law. There is little binding precedent in *T.M.M.H.*

9

A review of the justices' opinions in that case is needed here. The grandmother in *T.M.M.H.* argued she had statutory standing to appeal in an adoption proceeding as a parent because of court orders, agreements with the mother, and her de facto relationship with the child. 307 Kan. at 912. Three justices would not reach the question and took no position on the claim on procedural grounds only due to an insufficient record. 307 Kan. at 920. Two justices would have ruled generally that the grandmother had a legitimate claim to being an interested person in the proceeding and remand for fact-finding. 307 Kan. at 942 (Johnson, J., dissenting). One justice would have ruled the grandmother presented a prima facie basis for her standing as a parent and remand for an evidentiary hearing to determine whether she could sustain her burden. 307 Kan. at 939 (Rosen, J., dissenting). One justice agreed the grandmother had met her burden to establish a prima facie basis for standing as a parent under the court's current precedent, *Frazier,* but felt that it was wrongly decided. 307 Kan. at 925-26 (Stegall, J., concurring). The thrust of the ruling is that grandparents lack standing simply because they are grandparents. In other words, their status as grandparents does not determine their right to be viewed as an interested person in an adoption proceeding.

But, importantly, we note that there was no claim in *T.M.M.H.* that grandmother had custody of the child for six years before the adoption petition was filed as Grandfather has claimed here. The district court here took one statement from *T.M.M.H.* about grandparents and ruled Grandfather lacked standing simply *because he was a grandparent.* The court ignored his claim of having custody of E.A. for six years. If that claim is true, then it calls into question whether the adoption by Grandmother is in the best interests of E.A. Nothing in this record shows us a good reason to ignore this claim.

10

*We explore Grandfather's standing to appeal his denial of interested party status.*

Grandfather argues that K.S.A. 2022 Supp. 59-2401a confers the district court "almost unlimited authority" to grant interested party status to nonparents and the responsibility to respond in extraordinary circumstances.

The statute K.S.A. 2022 Supp. 59-2401a provides for appeals in adoption proceedings, allowing an "interested party" to bring an appeal. Under K.S.A. 2022 Supp. 59-2401a(e)(1), (e)(7), or (e)(8), an interested party in an adoption proceeding could be a parent, the petitioner, or "any other person granted interested party status by the court from which the appeal is being taken." See *T.M.M.H.*, 307 Kan. at 910-11.

The latter language implies the district court can grant interested party status to someone other than a parent or the petitioner, though the language is not particular to adoption proceedings.

The plain language only allows an appeal by one who was granted interested party status. The plurality opinion in *T.M.M.H.* concluded as much, but it also stated that the grandmother in that case had waived a contrary argument:

> "Grandmother presents the issue on appeal as one arising because she does *not* have interested party status; she argues the district court erred in denying her that status. Thus, as the issue is presented to us, Grandmother's standing to appeal cannot stand on her designation as an interested party. Although this may appear harsh or unfair because it leaves someone who believes the district court erred when denying interested party status without an appellate remedy, no arguments have been presented suggesting we must interpret the statute in some way other than its plain language. Any such arguments have also been waived. See *Angelo*, 306 Kan. at 236. Furthermore, the right to appeal is statutory and only the legislature can revise the statute." 307 Kan. at 912.

11

A panel of this court has previously held that an appellant denied interested party status by the trial court had no standing to appeal that decision under the Kansas Code for Care of Children, where an appeal could be taken by "'any interested party.'" *In re S.C.*, 32 Kan. App. 2d 514, 516-17, 85 P.3d 224 (2004). The panel stated:

> "This may appear to be a rather harsh result since it leaves someone whose interested party petition is denied without an appealable remedy. That, however, is apparently what the legislature intended when it passed the statutes cited above. We deal here with the lives of two young children, and the sooner the litigation can be terminated, the sooner the children can get on with a normal life. Under those circumstances, it becomes understandable why we cannot allow appeals from everything that happens under the Code." 32 Kan. App. 2d at 517.

Here, Grandfather was not granted interested party status by the district court. A plain reading of the statute suggests that he does not have statutory standing on appeal to argue the district court should have granted him interested party status as a nonparent or de facto parent. K.S.A. 2022 Supp. 59-2401a(e)(8); see also *In re L.C.*, No. 120,072, 2020 WL 110866, at *5 (Kan. App. 2020) (unpublished opinion) ("[G]enerally only an aggrieved party or one permitted to intervene may appeal a judgment.").

Grandfather contends that reading of the statute is circular, and the court has authority under an exercise of the doctrine of *parens patriae*. This doctrine has been described in several previous cases.

The *Frazier* court invoked the *parens patriae* function of the courts in its standing and jurisdiction analysis:

> "Moreover, what is conspicuously absent from Goudschaal's jurisdictional arguments is any consideration of the power of Kansas courts to protect the interests of our children. We have declared that the public policy in Kansas requires our courts to act in the best interests of the children when determining the legal obligations to be imposed

12

and the rights to be conferred in the mother and child relationship. See *In [re] Marriage of Ross,* 245 Kan. 591, Syl. ¶ 2, 783 P.2d 331 (1989). Further, after the family unit fails to function, 'the child's interests become a matter for the State's intrusion,' in order to avoid jeopardizing the child if 'a parent's claim for the child is based solely or predominantly on [selfish] motives.' 245 Kan. at 602. In order to accomplish this *parens patriae* function of protecting our children, the district court must necessarily be invested with subject matter jurisdiction." *Frazier*, 296 Kan. at 747.

We embrace that reasoning here. In this case, we witness a battle between two grandparents fighting to adopt their grandson, E.A.

But Kansas courts must also consider the rights of E.A. while this battle rages on and act to protect those rights. We will not sweep away Grandfather's appeal based on a claim of faulty standing. By exercising our responsibility of protecting children as described in *Frazier*, we will consider his appeal.

*What is an interested party?*

If Grandfather can appeal, then the issue is whether the district court had the legal authority to grant Grandfather interested party status in the adoption proceeding as a nonparent or de facto parent.

There is no definition of interested party in the Adoption Act. In contrast, "interested party" is defined in the Revised Kansas Code for Care of Children and includes grandparents: "A grandparent of the child shall be an interested party to a child in need of care proceeding." K.S.A. 38-2241(c)(1). But Kansas courts have held grandparents are not interested parties in adoptions. See, e.g., *Browning v. Tarwater*, 215 Kan. 501, 506, 524 P.2d 1135 (1974).

13

The term "interested party" was used in the Adoption Act prior to July 2018 in a section concerning hearings on adoption petitions. K.S.A. 59-2134(a). Effective July 2018, "interested party" was changed to "party in interest" and the statute reads as follows: "Upon the hearing of the petition, the court shall consider the assessment and all evidence, including evidence relating to determination of whether or not the court should exercise its jurisdiction, offered by any party in interest." K.S.A. 2018 Supp. 59-2134(a). "Party in interest" is defined as:

"(1) A parent whose parental rights have not been terminated;
"(2) a prospective adoptive parent;
"(3) an adoptive parent;
"(4) a legal guardian of a child;
"(5) an agency having authority to consent to the adoption of a child;
"(6) the child sought to be adopted, if over 14 years of age and of sound intellect; or
"(7) an adult adoptee." K.S.A. 2018 Supp. 59-2112(h).

In its order denying Grandfather's petition to intervene, the district court ruled that the definition of party of interest enacted in 2018 determined who had statutory standing in adoption proceedings. Because Grandfather did not qualify as a party in interest, he lacked standing as a matter of law. Then in its final order, the district court stated that "'interested party'" and "'party in interest'" were different but that K.S.A. 2018 Supp. 59-2134(a) was written to purposely limit presentation of evidence in adoption cases to "'any party in interest.'"

Whether standing in an adoption proceeding is necessarily limited to those that qualify as a party in interest under K.S.A. 2018 Supp. 59-2134(a) is a question of law. If the district court had the legal authority to grant Grandfather interested party status in the adoption proceeding, then the court made an error of law and remand would be appropriate.

14

A review of some other provisions in the Adoption Act is necessary to determine who may be an interested party. Notice of a hearing on a petition for an independent adoption must be given to "any person who has physical custody of the child" and any "legal guardian of the child." K.S.A. 2018 Supp. 59-2133(b).

Here, Grandfather had a right to notice under K.S.A. 2018 Supp. 59-2133(b) because he had physical custody of the child. But this court has held an entitlement to notice alone does not equate to standing. *In re Adoption of J.A.B.*, 26 Kan. App. 2d 959, 968-69, 997 P.2d 98 (2000).

Consent to an independent adoption shall be given by:

"(1) The living parents of the child; or
"(2) one of the parents of the child, if the other's consent is found unnecessary under K.S.A. 59-2136, and amendments thereto; or
"(3) the legal guardian of the child, if both parents are dead or if their consent is found to be unnecessary under K.S.A. 59-2136, and amendments thereto; or
"(4) the court entering an order under K.S.A. 38-2270, and amendments thereto; and
"(5) the judge of any court having jurisdiction over the child pursuant to the revised Kansas code for care of children, if parental rights have not been terminated; and
"(6) the child sought to be adopted, if over 14 years of age and of sound intellect." K.S.A. 2022 Supp. 59-2129(a).

Grandfather's consent to the adoption was not required under K.S.A. 2022 Supp. 59-2129(a). In *Browning*, the court held that because a grandmother's consent was not required for a stepparent adoption, there was nothing she could have done to defeat the adoption and she was not an interested party entitled to notice of the adoption. 215 Kan. at 506.

The statute limits who can access the files and records in an adoption proceeding. For a grandparent to access an adoption file before the final decree of adoption, the grandparent would have to be the party filing for adoption or a party in interest. See K.S.A. 2018 Supp. 59-2122.

Grandfather was not the party filing for adoption, so he could not access the adoption file unless he was a parent, prospective adoptive parent, adoptive parent, or legal guardian of the child. See K.S.A. 2018 Supp. 59-2112(h). In his filings, Grandfather referred to himself as "adoptive father" and "de facto parent." But "taking a child into a family and treating it as natural offspring is not adoption." *Ellis v. Coal Co.*, 100 Kan. 187, 188, 163 P. 654 (1917). The Kansas Supreme Court has set no test for de facto parentage. See *In re M.F.*, 312 Kan. 322, 350, 475 P.3d 642 (2020). Grandfather has not referred to himself as "prospective adoptive parent" nor has he claimed to be a "legal guardian" of E.A. See K.S.A. 2018 Supp. 59-2112(h).

While the statutory analysis may not fall in Grandfather's favor, the idea that an adoption court *could not* hear from a person with relevant evidence if the child's best interests were in question has the potential to lead to absurd results. We presume the Legislature does not intend absurd or unreasonable results. *In re M.F.*, 312 Kan. at 351. The district court's decision that K.S.A. 2018 Supp. 59-2134(a) was written to purposely preclude presentation of relevant evidence in all adoption cases is an absurd result and cannot be the intent of the Legislature. We do not interpret the statute to mean that all grandparents can intervene in their grandchild's adoption. These cases are fact driven.

The Indiana Supreme Court explained why an adoption court may need to hear from a person with custody of the child even if that custody did not derive from a court order:

> "[I]n determining whether the adoption is in the child's best interests, trial courts *should* hear from the party with care, custody, and control of the child in question—regardless of whether the party's responsibility derives from a court order. Moreover, those with lawful custody of the child are exactly who trial judges *want* to hear from as they make one of the toughest decisions they are called upon to decide. And who better to know and speak to the child's best interests than the person(s) functioning as the child's parent(s)." *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585-86 (Ind. 2014).

16

As explained above, the authority largely opposes Grandfather's position. But there is a case from this court holding individuals with whom the child is residing are interested parties in adoption proceedings. *In re M.K.*, 31 Kan. App. 2d 24, Syl. ¶ 1, 59 P.3d 355 (2002). And two of the justices in *T.M.M.H.* would have ruled the grandmother had a legitimate claim to being an interested person in the adoption proceedings. 307 Kan. at 942 (Johnson, J., dissenting).

Standing is "'a party's right to make a legal claim or seek judicial enforcement of a duty or a right.'" *T.M.M.H.*, 307 Kan. at 908. According to our Supreme Court in a recent parentage case, an "'interested party'" is a person who has an "'interest'" in the proceeding. *In re L.L.*, 315 Kan. at 393. The court analyzed whether a set of grandparents were interested parties to bring an action under the Kansas Parentage Act to determine the existence of a mother and child relationship between their daughter and their grandchild. The court held the grandparents had established an interest which qualified them as interested parties. They needed to establish their daughter was the mother of the child in order to establish their status as grandparents of the child so they could qualify for grandparent visitation. *In re L.L.*, 315 Kan. at 393.

What was Grandfather's "interest" in the adoption proceeding? What duty or right was he seeking to enforce? Grandfather wanted his custody of E.A. to remain intact because he believed that would be in E.A.'s best interests. Could the court enter such an order? The court at least had the power to deny Grandmother's petition to adopt the child. Under K.S.A. 2018 Supp. 59-2134(b), after denying a petition for adoption, the court can give *temporary* custody of the child to another person. In this case, however, the natural parents would have retained their parental rights. See *In re L.S.*, 14 Kan. App. 2d 261, 262, 788 P.2d 875 (1990).

17

*Grandfather contends that these circumstances were not ordinary.*

Grandfather sums up the positions of the parties this way: "[Appellees] are focused on the narrow, biological interpretation of parenthood and the constraints of the statute, while [Grandfather's] argument revolves around the court's responsibility as *parens patriae* to protect the child's best interests in extraordinary circumstances."

Grandfather argues this is a case of extraordinary circumstances. He was the only parent E.A. knew. Severing the attachment bond with Grandfather was traumatic and otherwise harmful to E.A. He argues the court should have determined whether the circumstances were extraordinary and considered the best interests of E.A. Grandfather raised this argument to the district court before the court first ruled he lacked standing, citing *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 442 P.3d 457 (2019). This was preserved for review.

In its final order, the district court rejected Grandfather's arguments about the *parens patriae* power of the court, extraordinary circumstances, and de facto parentage for lack of supporting legal authority.

Grandfather acknowledges the consent to adopt is an exercise of parental preference. But he argues, "[t]he Court ought not to give deference or validate an adoption consent signed by people who long ago abdicated any parental rights that they once had by reasons of biology. The natural parents simpl[y] do not have any rights to confer."

According to the parental preference doctrine:

"[A] parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that

18

question is in issue, is entitled to custody as against grandparents or others who have no permanent or legal right to custody." *Browning*, 215 Kan. at 504.

Several factors need to be considered. In the absence of unusual or extraordinary circumstances, the parental preference doctrine simply applies in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent, including a grandparent. *B.H.*, 309 Kan. 1097, Syl. ¶ 2. When a natural parent who is fit and has assumed his or her parental obligations wants custody of the child, the best interests of the child is not the overarching consideration in the adoption. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1063, 190 P.3d 245 (2008). Generally, as part of the parent's fundamental rights, a natural parent retains the right to consent to an adoption until their parental rights are terminated. See *In re Adoption of J.A.B.*, 26 Kan. App. 2d at 967-68. Normally, courts presume a fit parent acts in their child's best interests. But when the natural parents are unfit or extraordinary circumstances exist, the court can decide the best interests of the child. See *B.H.*, 309 Kan. at 1105-06.

In *In re Adoption of J.A.B.*, a grandparent argued the natural mother of a child could not give valid consent to a stepparent adoption while her parental rights had been suspended under an emergency guardianship and while a CINC proceeding was pending. He argued the mother was an addict who was incapacitated by the use of drugs. The court held the mother had the legal right to consent to the adoption. The only way to sever the legal relationship was the termination of her parental rights. 26 Kan. App. 2d at 967-68. The court emphasized this was a stepparent adoption rather than an independent adoption and that the stepparent's fitness was not questioned. 26 Kan. App. 2d at 967-68. The grandparent did not have standing to contest the adoption because adoption was controlled by statute, and he had no right in the adoption proceeding other than concerning whether visitation should be granted. 26 Kan. App. 2d at 968-69.

This case is not a stepparent adoption. Neither natural parent has any desire to care for their child. Neither natural parent wants to retain their parental rights. The custody dispute is not between a natural parent and a third party. It is between two grandparents. Under the undisputed facts, neither natural parent ever assumed their parental duties. Their one and only exercise of their parental preference rights was to consent to the adoption by Grandmother. The parents did not even invoke the parental preference doctrine in this appeal; Grandmother did. This is quite a different scenario than any of the cases cited above. Allowing Grandfather to participate in the proceedings does no harm to whatever constitutional rights the natural parents may have had under these circumstances.

*We offer some observations about fraud on the court.*

Because we are concerned about the events surrounding the filing of the petition and are remanding the matter to the district court, we are asking the district court to make further inquiry on whether there was a fraud committed here. A judgment may be set aside for "fraud on the court." K.S.A. 2023 Supp. 60-260(d)(3). Federal law guides our determination whether there has been fraud on the court. See *Cool v. Cool*, 203 Kan. 749, 755-56, 457 P.2d 60 (1969); *Boldridge v. National City Bank*, No. 109,276, 2013 WL 6389341, at *3-4 (Kan. App. 2013) (unpublished opinion). A fraud on the court "is an unconscionable plan or scheme that is designed to improperly influence the court in its decision." *In re Estate of Field*, 55 Kan. App. 2d 315, 343-44, 414 P.3d 1217 (2018) (quoting 71 C.J.S., Pleading § 684). The Tenth Circuit explained, "Fraud on the court . . . is fraud which is directed to the judicial machinery itself and *is not fraud between the parties or fraudulent documents, false statements or perjury.*" *Weese v. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996).

"The remedy is available only to prevent a grave miscarriage of justice." 47 Am. Jur. 2d, Judgments § 689.

"A fraud on the court is fraud which is directed at the judicial machinery itself, directly corrupting the impartial functions of the court or attempting to subvert the integrity of the court itself, such as a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases which are presented for adjudication. It may require a showing of an unconscionable plan or scheme which is designed to improperly influence the court's decision, and it exists only where there has been the most egregious conduct involving a corruption of the judicial process itself." 47 Am. Jur. 2d, Judgments § 689.

Fraud is never presumed and must be proved by clear and convincing evidence. *In re Estate of Field*, 55 Kan. App. 2d at 324. All doubts must be resolved in favor of the finality of the judgment. *Weese*, 98 F.3d at 552.

If the court finds that there is no evidence of fraud then that should end the inquiry. If there is evidence of fraud, then the court should take whatever steps are necessary to prevent the fraud from corrupting the judicial process in this case.

*Conclusion*

When there is much love, there can be much struggle. This adoption case is an example. The appearance of this case to an observer could lead to the conclusion that Grandmother simply won the race to the courthouse and snatched her grandson away from Grandfather. Claims of six years of custody should not be ignored when deciding the propriety of an adoption.

We vacate the adoption decree and remand for the district court to hold a hearing on the adoption after granting Grandfather interested party status and giving him a chance to present whatever evidence he has that is pertinent to the issues of the petition.

Reversed, decree vacated, and case remanded with directions.